# UNITED STATES *v.* CHASE.

CERTIFICATE OF DIVISION IN OPINION FROM THE CIRCUIT COURT OF·THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 241.   Argued March 28, 31, 1890.—Decided April 28, 1890.

The knowingly depositing an obscene letter in the mails, enclosed in an envelope or wrapper upon which there is nothing but the name and address of the person to whom the letter is written, is not an offence within the act of July 12, 1876, 19. Stat. 90, c. 186.

A sealed and addressed letter is not a " writing" within the meaning of that act.

A certified question: " Does the indictment charge the defendant with any . offence?" is too general to be made the subject of a Certificate of Division.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiff.

*Mr. Warren O. Kyle* for defendant.

MR. JUSTICE LAMAR delivered the opinion of the court.

This was an indictment on the act of Congress of July 12, 1876, chapter 186, found and returned in the District Court, and remitted, pursuant to section 1037 of the Revised Statutes, to the court below, charging that on the twenty-fifth day of January, 1876, at North Attleborough, in the District of Massachusetts, " Leslie G. Chase did unlawfully and·knowingly deposit and cause to be deposited in the mails of the said United States, then and there for mailing and delivery, a certain obscene, lewd and lascivious letter, which said letter was then and there non-mailable matter, as declared by section one of an act of Congress approved on the twelfth day of July, in the year of our Lord one thousand eight hundred and seventy-six, and which said letter is and then and there was so grossly obscene, lewd and lascivious that the same would be offensive to the court here. and is unfit and improper to appear upon the records thereof, wherefore the jurors aforesaid do

not set forth the same in this indictment, which said letter was then and there enclosed in a certain paper wrapper, which said wrapper was then and there addressed and directed as follows, that is to say, 'Watchweer Print, Providence, R. I.,' against the peace and dignity of the United States, and contrary to the form of the statute in such case made and provided."

After a plea of guilty had been entered and before sentence, a motion in arrest of judgment was made, on the following grounds:

"1. The indictment does not set forth the contents of the letter which is alleged to be obscene, lewd, lascivious and non-mailable, nor does it describe said letter or any part thereof, nor does it in any way identify said letter.

"2. The indictment does not allege that the defendant knew the contents of said letter at the time of the alleged deposit thereof in the mails of the said United States.

"3. The indictment does not allege that the defendant deposited said letter in the mails of the said United States for the purpose of circulating and disposing of, or of aiding in the circulation or disposition of, anything declared to be non-mailable matter by any law of the United States.

"4. The indictment does not allege that the defendant deposited, or caused to be deposited, for mailing or delivery, anything declared to be non-mailable matter by section one (1) of an act of Congress approved on the twelfth day of July, A.D. 1876, or by any law of the United States.

"5. The indictment does not charge the defendant with any offence."

At the hearing in the Circuit Court upon the motion in arrest of judgment, the following questions arose upon which the judges by whom the court was held were divided in opinion, viz:

"First. Is the knowingly depositing in the mails of an obscene letter, enclosed in an envelope or wrapper upon which there is nothing but the name and address of the person to whom the letter is written, an offence within the act of July 12, 1876, chapter 186?

"Second. Does this indictment allege that the defendant deposited, or caused to be deposited, for mailing or delivery, anything declared to be non-mailable matter by that act or by any law of the United States?

"Third. Does this indictment charge the defendant with any offence?

"Thereupon, at the request of the counsel for the United States, it is ordered that these questions be stated as aforesaid and be certified under the seal of this court to the Supreme Court of the United States at its next session."

Objection is taken to the consideration of the questions presented by this certificate of division, for several reasons, none of which are deemed sufficient to preclude our taking jurisdiction of the case; and we shall, therefore, proceed to consider the questions certified in the order they are arranged in the certificate.

Sec. 1 of the act July 12, 1876, 19 Stat. 90, on which this indictment is founded, is as follows:

"Every obscene, lewd or lascivious book, pamphlet, picture, paper, writing, print or other publication of an indecent character, and every article or thing designed or intended for the prevention of conception or procuring of abortion, and every article or thing intended or adapted for any indecent or immoral use, and every written or printed card, circular, book, pamphlet, advertisement or notice of any kind giving information, directly or indirectly, where, or how, or of whom or by what means any of the hereinbefore mentioned matters, articles or things may be obtained or made, and every letter upon the envelope of which, or postal card upon which, indecent, lewd, obscene or lascivious delineations, epithets, terms or language may be written or printed, are hereby declared to be non-mailable matter, and shall not be conveyed in the mails, nor delivered from any post-office nor by any letter-carrier; and any person who shall knowingly deposit, or cause to be deposited, for mailing or delivery, anything declared by this section to be non-mailable matter, and any person who shall knowingly take the same, or cause the same to be taken, from the mails, for the purpose of circulating or disposing of,

or of aiding in the circulation or disposition of the same, shall be guilty of a misdemeanor, and shall for each and every offence be fined not less than one hundred dollars nor more than five thousand dollars, or imprisoned at hard labor not less than one year nor more than ten years, or both, at the discretion of the court."

The contention on the part of the United States is, that the term "writing," as used in this statute, is comprehensive enough to include, and does include, the term "letter," as used in the indictment; and it is insisted, therefore, that the offence charged is that of unlawfully and knowingly depositing in the mails of the United States an obscene, lewd and lascivious "writing," etc., etc.

We do not concur in this construction of the statute. The word "writing," when not used in connection with analogous words of more special meaning, is an extensive term, and may be construed to denote a letter from one person to another. But such is not its ordinary and usual acceptation. Neither in legislative enactments nor in common intercourse are the two terms "letter" and "writing" equivalent expressions. When in ordinary intercourse men speak of mailing a "letter" or receiving by mail a "letter," they do not say mail a "writing" or receive by mail a "writing." In law the term "writing" is much more frequently used to denote legal instruments, such as deeds, agreements, memoranda, bonds and notes, etc. In the statute of frauds the word occurs in that sense in nearly every section. And in the many discussions to which this statute has given rise, these instruments are referred to as "the writing" or "some writing." But in its most frequent and most familiar sense the term "writing" is applied to books, pamphlets and the literary and scientific productions of authors. As for instance, in that clause in the United States Constitution which provides that Congress shall have power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective *writings* and discoveries."

In the statute under consideration, the word "writing" is used as one of a group or class of words, — book, pamphlet,

picture, paper, writing, print, — each of which is ordinarily and *prima facie* understood to be a publication; and the enumeration concludes with the general phrase "or other publication," which applies to all the articles enumerated, and marks each with the common quality indicated.

It must, therefore, according to a well-defined rule of construction, be a published writing which is contemplated by the statute, and not a private letter, on the outside of which there is nothing but the name and address of the person to whom it is written.

We do not think it a reasonable construction of the statute to say that the vast mass of postal matter known as "letters" was intended by Congress to be expressed in a term so general and vague as the word "writing," when it would have been just as easy, and also in strict accordance with all its other postal laws and regulations, to say "letters" when letters were meant; and the very fact that the word "letters" is not specially mentioned among the enumerated articles in this clause is itself conclusive that Congress intended to exclude private letters from its operations.

Upon this point Judge Hammond, in his opinion in *United States* v. *Huggett*, 40 Fed. Rep. 636, 641, makes the following apt and, to our minds, conclusive remarks : " I have taken the trouble to examine with care the legislation concerning our postal affairs, and do not find a single instance where Congress has ever used any other word to include 'letters' than that word itself, except such expressions as 'the mail,' 'mail-matter,' 'bag or mail of letters,' etc.　. 　. 　. 　Whenever the legislation in hand requires specific classification or enumeration, I find no word ever substituted for 'letters' to express that which is commonly known as letters in relation to the postal service. We have 'letter and newspaper envelopes,' 'letter correspondence,' 'registered letters,' 'unclaimed letters,' 'dead letters,' 'request letters,' 'non-delivered letters,' 'all letters and other mail matter,' 'foreign letters,' 'letters or packets,' 'letters and packets,' 'letter postage,' 'letter mail,' 'letter and other mail matter,' and such like, almost innumerably; and these I have taken quite at random from the

Revised Statutes. Can it be possible that Congress, then, wishing to include 'letters' in any particular and accurate enumeration, shall drop that word so imbedded in our postal laws and that of our ancestors beyond the sea, and adopt some unfamiliar, inferior, and in every sense ambiguous term to express the idea?"

A further argument in support of the view we have asserted is found in the fact that the statute, after it has declared by enumeration, in the clause under consideration, what articles shall be non-mailable, adds a separate and distinct clause declaring that "every letter *upon the envelope of which* . . . . indecent, lewd, obscene or lascivious delineations, epithets, terms or language may be written or printed . . . shall not be conveyed in the mails," and the person knowingly or wilfully depositing the same in the mails " shall be deemed guilty of a misdemeanor," etc. This distinctly additional clause, specifically designating and describing the particular class of letters which shall be non-mailable, clearly limits the inhibitions of the statute to that class of letters alone, whose indecent matter is exposed on the envelope. It is an old and familiar rule that, "where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." *Pretty* v. *Solly*, 26 Beavan, 610, per Romilly, M. R.; *State* v. *Comm'rs of Railroad Taxation*, 37 N. J. Law, 228. This rule applies wherever an act contains general provisions and also special ones upon a subject, which, standing alone, the general provisions would include. Endlich on the Interpretation of Statutes, 560.

The decisions of the Circuit Courts upon the question presented to us by this certificate have been conflicting. Those sustaining indictments in cases similar to this hold that the term " writing " comprehends " letters," and insist that even if the general phrase " other publication " is allowed to apply to the word, the sending or mailing a letter by one person to

another is a sufficient publication to bring a letter within the statute, as is held to be the case in an action of slander and libel.

The reply to this is, that the statute prohibits the conveyance by mail of matter which is a publication before it is mailed, and not such as becomes a publication by reason of its being mailed.

Another argument on which indictments of this character have been sustained by some of the Circuit Courts is, that a reasonable construction must be given the statute, and, it being evident that Congress intended to exclude anything of an obscene character from the mails, it is immaterial whether the thing prohibited is inside or outside of an envelope, and therefore unreasonable to hold that Congress intended not to allow a decent writing in an obscene envelope, but at the same time to allow obscene writing in a proper envelope. We recognize the value of the rule of construing statutes with reference to the evil they were designed to suppress as an important aid in ascertaining the meaning of language in them which is ambiguous and equally susceptible of conflicting constructions. But this court has repeatedly held that this rule does not apply to instances which are not embraced in the language employed in the statute, or implied from a fair interpretation of its context, even though they may involve the same mischief which the statute was designed to suppress. *United States* v. *Sheldon*, 2 Wheat. 119; *United States* v. *Wiltberger*, 5 Wheat. 76, 95; *United States* v. *Morris*, 14 Pet. 464, 475; *United States* v. *Hartwell*, 6 Wall. 385; *United States* v. *Reese*, 92 U. S. 214.

But we cannot concede that the policy of the statute was so sweeping as the argument assumes. We think that its purpose was to purge the mails of obscene and indecent matter as far as was consistent with the rights reserved to the people, and with a due regard to the security of private correspondence from examination. *Ex parte Jackson*, 96 U. S. 727. This object seems to have been accomplished by forbidding the use of the mails to books, pamphlets, pictures, papers, writings and prints, and other publications of an indecent nature, and also to private letters and postal cards whereon the indecent matter

is exposed to the inspection of others than the person to whom the letter is written.

Ashurst, J., said in *Jones* v. *Smart*, 1 T. R. 51 : "It is safer to adopt what the legislature have actually said than to suppose what they meant to say." In the *Queensborough Cases*, 1 Bligh, 497, Lord Redesdale said : "The proper mode of disposing of difficulties arising from a liberal construction is by an act of Parliament, and not by the decision of court." Congress seems to have acted upon this idea; and if further argument were needed in support of our view, it will be found, we think, in the fact that in an amendment to this statute passed September 26, 1888, 25 Stat. 496, c. 1039, for the first time in the history of the postal service the word "letter" was included in the list of articles made non-mailable by reason of their obscene, lewd, lascivious or otherwise improper character. If letters were embraced in the statute on which this indictment was founded, why did Congress consider it necessary to insert the specific word to designate them in 1888 ? It must be that that body did not put the construction on the prior statute claimed in behalf of the United States, else we have it doing a useless and vain act. But as the amendment of 1888 is not involved in this case, no opinion is expressed as to whether the term "letter," as used therein, can, under a proper construction of that statute, be held to include a strictly private sealed letter.

With reference to the argument that the word "writing" occurs, in the legislation on this subject, as an amendment, we have only to remark that the entire history of that legislation, so far from forming a basis for a different construction of this act, confirms it.

> *For the reasons above given our answer to the first question certified is in the negative. This being decisive, we need not consider the second question; and the third, as has been repeatedly held, is too general to be the subject of a Certificate of Division.*