**SERVICE LIFE INSURANCE COM-
PANY, a Corporation, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16628.**

United States Court of Appeals
Eighth Circuit.

July 17, 1961.

Joseph T. Votava, Omaha, Neb., Beber & Richards, Omaha, Neb., on the brief, for appellant.

William A. Friedlander, Attorney, Tax Division, Dept. of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attorneys, Dept. of Justice, Washington, D. C., and William C. Spire, U. S. Atty., and Thomas J. Skutt, Asst. U. S. Atty., Omaha, Neb., on brief, for appellee.

Before JOHNSEN, Chief Judge, and WOODROUGH and MATTHES, Circuit Judges.

MATTHES, Circuit Judge.

The Service Life Insurance Company, hereinafter referred to as plaintiff, instituted this statutory action for the purpose of recovering a refund of income taxes which it paid pursuant to deficiency assessments for the years 1949, 1950, 1952 and 1953. The deficiencies arose from disallowance of deductions for certain sums paid as interest on borrowed funds.

Plaintiff was incorporated under the insurance laws of the State of Nebraska and engaged in the business of issuing life insurance, annuities, health and accident policies. In 1938 the company was authorized by its directors to become a member of a Federal Home Loan Bank in accordance with the provisions of § 8–714 Revised Statutes of Nebraska 1943 as amended.[1] During the taxable years in question plaintiff engaged in soliciting and making mortgage loans, using for that purpose money borrowed from the Federal Home Loan Bank. During the four years under consideration, plaintiff's assets included between 1623 to 1974 mortgages and it is quite apparent that these mortgages were of importance to its investment income. During 1949, 45% of its income-producing assets had been acquired with funds borrowed from the Federal Home Loan Bank; during the years 1950, 1952 and 1953, the proportion of such assets was 46%, 43%

---

1. The "Federal Home Loan Bank [Act]", Title 12 U.S.C.A. § 1424 also provides that an insurance company is eligible to become a member of a Federal Home Loan Bank.

and 53%, respectively. A breakdown of plaintiff's investment income appears in the trial court's memorandum opinion as follows [189 F.Supp. 286]:

| "Year | Total Investment Income | Income from Mortgages possible Thru Federal Home Bank Loans |
|-------|------------|-------------|
| 1949 | $484,366 | $210,711 |
| 1950 | 496,057 | 236,004 |
| 1952 | 470,575 | 202,863 |
| 1953 | 445,262 | 179,492" |

In the trial court the Government contended that because of plaintiff's extensive borrowing of funds for the purpose of making mortgage loans, it was not a life insurance company as defined in § 201(b), Internal Revenue Code, 1939;[2] that it was not entitled to special tax treatment as a life insurance company and that its entire tax liability should be recomputed under provisions applicable to ordinary corporations. This issue was resolved against the Government, the trial court ruling that plaintiff did qualify as a life insurance company within the meaning of the statute. The Government does not appeal from this ruling.

As an alternative defense against plaintiff's claim for refund, the Government asserted that interest paid on borrowed money used for the purpose of procuring income-producing assets, was not deductible as an "investment expense" under § 201(c) (7) (B) of the 1939 Internal Revenue Code, as amended. This contention was sustained and on the basis of its ruling, the Court rendered judgment against plaintiff.

On this appeal we have for determination the sole question: Is interest paid by a life insurance company on money borrowed by it for the purpose of making income-producing investments, deductible as an "investment expense" within the meaning of the statutes which were applicable during the years under consideration? To properly resolve the issue, it is necessary to review in some detail the history of taxation of life insurance companies.

Prior to 1921, such companies were taxed under the same provisions of the taxing statutes as ordinary corporations and premium receipts were included in the gross taxable income of such companies. The Revenue Act of 1921 created a new and more equitable theory of taxation, that of a tax upon the company's investment income. See Vol. 8, Mertens, Law of Federal Income Taxation, §§ 44.01, 44.02. Generally speaking, the Revenue Act of 1921 § 244(a), defined "gross income" as the gross amount received during the taxable year from interest, dividends and rents. The term "net income" was defined to mean the gross income less certain deductions which were authorized by § 245 of the Act. In particular, § 245(a) (5) authorized a deduction for "Investment expenses paid during the taxable year * * *" and § 245(a) (8) authorized a separate deduction for "All interest paid or accrued within the taxable year on its indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities * * * the interest upon which is wholly exempt from taxation under this title." These separate deductions for investment expenses and interest paid were continued in the Code until the taxable year, beginning in 1942, when Congress amended the law, particularly with respect to the deductions to be taken in arriving at the taxable income. Section 201(c) (1) Internal Revenue Code of 1939, as amended by the Revenue Act of 1942, defines "gross income" as the "gross amount of income received during the taxable year from interest, dividends, and rents."

---

2. "Definition of life insurance company. When used in this chapter, the term 'life insurance company' means an insurance company which is engaged in the business of issuing life insurance and annuity contracts * * * or noncancellable contracts of health and accident insurance, and the life insurance reserves

* * * plus unearned premiums and unpaid losses on noncancellable life, health, or accident policies not included in life insurance reserves, of which comprise more than 50 per centum of its total reserves * * *." 26 U.S.C.A. § 201 (b). .

The separate deduction for "interest paid" was eliminated. Section 201(c) (7) defines the term "net income" as the gross income less certain specific deductions, including tax-free interest and "investment expenses paid during the taxable year * * *," and § 202, defining "adjusted normal-tax net income," also provides a special deduction for a "reserve and other policy liability credit." The amount of this special credit was to be a figure to be determined and proclaimed by the Secretary of the Treasury each year and to be applicable to all insurance companies. This figure was to be computed in accordance with a formula. One of the constituent factors upon which the formula was based was the element of "interest paid." See § 202 Internal Revenue Code 1939, as amended by § 163(a) of the Revenue Act of 1942.[3] Section 201(c) (6) defines "interest paid" in this language:

"(A) All interest paid within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations * * * the interest upon which is wholly exempt from taxation under this chapter, and

"(B) All amounts in the nature of interest, whether or not guaranteed, paid within the taxable year on insurance or annuity contracts * * * which do not involve, at the time of payment, life, health, or accident contingencies."

The "reserve and other policy liability credit" which became a part of the Code in 1942, was explained in this manner:

"In order to arrive at an equitable solution of the proper amount to be allowed as a deduction for the earnings needed to maintain the reserves, the bill provides that a 'reserve and other policy liability credit' be substituted for the present reserve earnings deduction, *the deduction for interest paid*, and the deduction for deferred dividends. * * * The percentage is to be the same for all companies and is to be determined on the basis of the aggregate deductions of all companies for reserve earnings, *interest paid*, and deferred dividends." (Emphasis supplied.) S. Rep.No. 1631, 77th Cong., 2d Sess., p. 143 (1942–3 Cum.Bull. 504, 610.)

For the years 1949 and 1950, when this credit provision was a part of the law, plaintiff first deducted the amount of interest paid on borrowed money before reporting a figure for "gross investment income." Additionally, plaintiff also claimed and took a deduction for the special credit provided for by § 202(b) which, as above noted, included as one of the factors, the item of "interest paid."

The provisions of the 1939 Code relating to life insurance companies were again amended by the Revenue Act of 1951, § 336, and a new section, § 203A, was added whereby, in lieu of the former uniform formula deduction, "adjusted normal-tax net income" was to be com-

---

3. "Adjusted normal-tax net income," as defined by § 202, is the "normal-tax net income," [defined by § 201(c) (7), as gross investment income, less tax-free interest, investment expenses, real estate expenses and depreciation]—minus the "reserve and other policy liability credit provided in subsection (b) * * *."
 By subsection (b) of § 202, this credit was defined as follows:
 " * * * an amount computed by multiplying the normal-tax net income by a figure, to be determined and proclaimed by the Secretary for each taxable year. This figure shall be based on such data with respect to life insurance companies

for the preceding taxable year as the Secretary considers representative and shall be computed in accordance with the following formula: The ratio which (1) the aggregate of the sums of (A) 2 per centum of the reserves for deferred dividends, (B) *interest paid*, and (C) the product of (i) the mean of the adjusted reserves at the begining and end of the taxable year and (ii) the reserve earnings rate bears to (2) the aggregate of the excess of net incomes computed without any deduction for tax-free interest, over the adjustment for certain reserves provided in subsection (c)." (Emphasis supplied.)

puted by adding to net income eight times the adjustment for reserves provided in § 202(c), and substraction of a "reserve interest credit," which was to be computed with reference to various items,· *including interest paid*.[4]

Following this amendment and in 1952, plaintiff again deducted the amount of interest paid on borrowed funds from its total investment income and reported the difference as its "gross income" from investments. For the taxable year 1953, however, plaintiff reported the true gross amount of income received from investments and then took as a deduction the total amount of interest it had paid on money borrowed for investments as an "investment expense" under § 201(c) (7) (B). The manner in which plaintiff computed the "reserve interest credit" for 1952 and 1953 resulted in no such additional credit being taken on its returns for those years.

In summary, it appears that § 245(a) of the Revenue Act of 1921 specifically authorized life insurance companies, in arriving at net income, to deduct not only investment expenses paid [§ 245(a) (5)] but also "all interest paid or accrued within the taxable year on its indebtedness" [§ 245(a) (8)].; that when Congress amended the Code in 1942, the specific provision for deduction of "all interest paid" was deleted, and since that time there has been no statutory authority for deduction of "interest paid" as such, except insofar as this item is a constituent element in arriving at the "reserve and other policy liability credit," or the "reserve interest credit." It is also of significance and importance that the definition of "interest paid" as found in § 201(c) (6) of the 1939 Code, has remained unchanged, and means "*all* interest paid within the taxable year on indebtedness," and "*all* amounts in the nature of interest." (Emphasis supplied.)

First, it might be noted that the parties have not cited, nor did the trial court, or this Court, find that the precise issue in point here has been judicially determined. Superficially, it would appear that there is merit in the contention that the interest which plaintiff paid on funds which formed a substantial part of its investment capital, constituted an investment expense. But we are dealing with tax statutes and the question cannot be resolved on the basis of the understanding which might be attributed to the term "investment expense" as ordinarily understood. Likewise, it must be recognized that life insurance companies are taxed under special sections of the Code and the issue before us must be determined by interpretation of those sections in light of controlling rules and principles of law.

We are here dealing primarily with two statutory sections, one providing in general terms that an insurance company, in arriving at its taxable income, may take as a deduction "investment expenses," the other providing for a special reserve and liability credit in which "interest paid" is specifically designated as

---

4. "Sec. 203A. 1951 adjusted normal-tax net income

"(a) 1951 adjusted normal-tax net income. For the purposes of section 201, the term '1951 adjusted normal-tax net income' means the normal-tax net income plus eight times the amount of the adjustment for certain reserves provided in section 202(c) *and minus the reserve interest credit*, if any, provided in subsection (b) of this section.

"(b) Reserve interest credit. For the purposes of subsection (a), the reserve interest credit shall be an amount determined as follows:

"(1) Divide the amount of the· adjusted net income (as defined in subsection (c)) by the amount of the required interest (as defined in subsection (d)).

＊ ＊ ＊ ＊ ＊

"(d) Required interest. For the purposes of subsection (b) (1), the term 'required interest' means the total of—

"(1) The sum of the amounts obtained by multiplying (A) each rate of interest assumed in computing the taxpayer's life insurance reserves by (b) the means of the amounts of the taxpayer's adjusted reserves computed at that rate at the begining and end of the taxable year,

"(2) 2 per centum of the reserve for deferred dividends, and

"(3) *Interest paid*." (Emphasis supplied.)

a constituent factor. In this situation, the principle that specific terms prevail over general terms is applicable. No less an authority than the Supreme Court has said:

> "General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. United States v. Chase, 135 U.S. 255, 260 [10 S.Ct. 756, 34 L.Ed. 117]. Specific terms prevail over the general in the same or another statute which otherwise might be controlling. Kepner v. United States, 195 U.S. 100, 125 [24 S.Ct. 797, 49 L.Ed. 114]. In re Hassenbusch, [6 Cir.] 108 Fed. [35,] 38. United States v. Peters, [D.C.] 166 Fed. 613, 615." Ginsberg & Sons v. Popkin, 285 U.S. 204, at page 208, 52 S.Ct. 322, at page 323, 76 L.Ed. 704.

This rule was applied in State Mutual Life Assur. Co. v. Commissioner of Int. Rev., 1 Cir., 246 F.2d 319, a case which we regard as apposite in principle. There, the question was whether the insurance company was entitled to deduct as investment expenses in 1950 those portions of the real estate taxes, other expenses and depreciation, in respect of its home office property which were allocated to the space used by the company in its investment, as distinguished from underwriting, operations. Section 201(c) (7) (C) of the 1939 Code authorized a life insurance company to deduct from its gross investment income real estate expenses, which included taxes and other expenses paid during the taxable year exclusively upon or with respect to the real estate owned by the company. This deduction, however, was limited by § 201 (d) [5] to an amount "which bears the same ratio to such deduction * * * as the rental value of the space not so occupied

bears to the rental value of the entire property." The court applied the limitation to mean that "a life insurance company * * * is not permitted to deduct its real estate taxes, other expenses and depreciation with respect to *any* portions of its real estate which it owns and occupies." Ibid, at page 323. Alternatively, the insurance company argued that the deductions were allowable as "investment expenses" under § 201(c) (7) (B). The court resolved this contention on the basis of the foregoing rule of specific language controlling over general language, stating, at page 323:

> "Section 201(c) (7) (B) is a broad, general statement covering investment expenses; §§ 201(c) (7) (C) [real estate expenses] and 201 (c) (7) (D) [depreciation] deal specifically with two limited kinds of expenses."

After taking cognizance of the rule laid down in Ginsberg & Sons v. Popkins, supra, the court further stated, 246 F.2d at page 323:

> "Here, Congress specifically dealt with real estate taxes, expenses and depreciation under §§ 201(c) (7) (C) and 201(c) (7) (D), thereby removing them from the application of the general language of § 201(c) (7) (B). Petitioner would have us, in a sense, read §§ 201(c) (7) (C) and 201(c) (7) (D) out of the statute, because it does not like the limitation on these sections contained in § 201(d). But the sections are there and we believe that they must be given effect."

The foregoing language is apropos of the instant situation. Under the 1921 Code, the statute specifically authorized a life insurance company to deduct "all interest paid" in arriving at taxable income, but in 1942, Congress saw fit to materially amend the Code with respect

---

5. "§ 201(d) Rental value of real estate. The deduction under subsection (c) (7) (C) or (c) (7) (D) of this section on account of any real estate owned and occupied in whole or in part by a life insurance company, shall be limited to an amount which bears the same ratio to such deduction (computed without regard to this subsection) as the rental value of the space not so occupied bears to the rental value of the entire property."

to life insurance companies and removed the provision which separately authorized the deduction of interest paid, and placed the right to take this deduction in the section which created the reserve and special policy liability credit. In this connection, it is of vital significance that the term "interest paid," comprising a constituent element of the special credit deduction, is defined to encompass *"all* interest paid within the taxable year on indebtedness" without attempting to exclude, as plaintiff would have us do, interest paid on borrowed money which forms a part of the capital investment fund.

▮ As an adjunct to the rule that the specific takes precedence over the general, it is further established as a principle of statutory construction that "(w)hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379 and see Knapp-Monarch Co. v. Commissioner of Int. Rev., 8 Cir., 139 F.2d 863, 864; State Mutual Life Assur. Co. v. Commissioner of Int. Rev., supra.

Neither can we obviate the applicable principles by resort to equitable considerations. It may be that because plaintiff's investment capital is dependent in substantial measure upon borrowed funds, the deduction which Congress authorized through the medium of the reserve and policy liability credit and reserve interest credit will prove unjust or inequitable.[6] But the Supreme Court has said:

> "We deal here with a deduction which one obtains not as of right, but as of grace. Deputy v. du Pont, 308 U.S. 488, 493 [60 S.Ct. 363, 366, 84 L.Ed. 416]. The taxpayer has the burden to show that it is within the provision allowing the deduction.

\* \* \* This taxpayer argues the inequity of the results which would follow from our construction of the Code. But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible. \* \* \* We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit. \* \* \* The fact that the construction we feel compelled to make \* \* \* discriminates against the taxpayer on the accrual basis may suggest that changes in the law are desirable. But if they are to be made, Congress must make them." United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024.

See also, State Mutual Life Assur. Co. v. Commissioner of Int.Rev., supra, 246 F.2d at page 324; Luehrmann's Estate v. C. I. R., 8 Cir., 287 F.2d 10, at page 15.

▮ We have considered the argument that a 1953 Ruling by the Treasury Department evinces recognition of the validity of plaintiff's basic position. Since the ruling clearly contravened the law, it was without legal effect. It is elementary that revenue rulings and even Treasury Regulations are without force if they are in conflict with the statute. Boykin v. Commissioner of Internal Revenue, 8 Cir., 260 F.2d 249, 254.[7]

Likewise, plaintiff's reliance upon cases involving interpretation of other sections of the Code, relating to deduction of business expenses, generally, is misplaced. As previously observed, life insurance companies are treated for tax purposes as special entities, and taxation of such companies is governed by certain specific sections of the Code. State Mutual Life

---

6. Mertens, Law of Federal Income Taxation, Vol. 8, § 44.17 points out that life insurance companies generally derive their profit from investments, "mainly from the investment of that part of their premium receipts which are represented by their reserves." This forms some basis for believing that although the op-

erations engaged in by plaintiff are clearly within the law, they may be the exception to investment operations as ordinarily practiced in the industry.

7. The Government asserts·that subsequent revenue rulings have reversed the 1953 Ruling relied upon by plaintiff.

Assur. Co. v. Commissioner of Int. Rev., supra, 246 F.2d at page 324.

Plaintiff has failed to establish its statutory authority to deduct the amounts of interest paid in issue here and has not sustained its burden of showing that the amounts disallowed by the Commissioner were deductible in computing its tax liability for the years involved. Botany Worsted Mills v. United States, supra, 278 U.S. at pages 289, 290, 293, 49 S.Ct. at pages 132, 133.

The judgment of the trial court dismissing plaintiff's complaint is in all respects

Affirmed.