STAHMANN FARMS, INC., a New Mexico Corporation, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 78–1791.

United States Court of Appeals, Tenth Circuit.

Argued March 12, 1980.

Decided May 2, 1980.

Rehearing Denied Aug. 21, 1980.

Ray R. Regan of Bivins, Weinbrenner & Regan, P. A., Las Cruces, N. M., for plaintiff-appellant.

Stanley S. Shaw, Jr., Atty., Tax Div., Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D.C.; R. E. Thompson, U.S. Atty., Albuqurque. N.M., with him on the brief and of counsel), for defendant-appellee.

Before HOLLOWAY, DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal by a taxpayer, Stahmann Farms, Inc., from an adverse ruling of the United States District Court for the District of New Mexico. The case concerns the applicability of an airplane use tax, I.R.C. § 4491, to three aircraft owned by the taxpayer.

## STATEMENT OF THE FACTS

The case was submitted to the trial court on a set of stipulated facts. The following is uncontested. The taxpayer is a New Mexico corporation involved in the production and sale of pecans. Airplanes are used for spraying and dusting the pecan orchards. During the years in question, the taxpayer had six airplanes. It also maintained a private landing strip and hangars on property adjacent to its orchards. This property was leased from the State of New Mexico. It was used only by the taxpayer's employees for agricultural purposes. No public facilities were constructed on or were available at the facility. Nor were other aircraft used at the facility. Neither FAA employees nor equipment were located at the facility. Government monies, either federal or state, had not been used in developing or constructing the facility.

The taxpayer reported to the I.R.S. that three of its aircraft were subject to the use tax imposed by I.R.C. § 4491. The remaining three aircraft, a Piper PA-18, a Lockheed PV-2 and a Boeing Stearman, were reported as exempt from the use tax. This was based on the fact that these three aircraft flew only over the taxpayer's orchard. Their function was limited to spraying or performing other similar work for the taxpayer only. These aircraft maintained altitudes not in excess of 500 feet during their use. The law required that they be registered under Section 501(a) of the Federal Aviation Act of 1958.

The I.R.S. disagreed with the taxpayer's claim of exemption as to these aircraft and assessed a use tax against them. The taxpayer unsuccessfully contested the imposition of the tax through the Appellate Conference level. The tax was paid under protest and the taxpayer filed a complaint with the District Court. The District Court held that the tax on the use of civil aircraft, I.R.C. § 4491 et seq., was applicable to the aircraft of the plaintiff.

This appeal seeks review of the judgment of the District Court and reversal of the summary judgment order that the tax had to be paid on the subject aircraft.

I.R.C. § 4491 imposes a tax on the use of taxable civil aircraft. "Use" is defined in the statute as "use in the navigable airspace of the United States." I.R.C. § 4492(c)(2). It is conceded that the aircraft in question are "taxable civil aircraft" within the terms of the statute. So, the limited question is whether the aircraft were used in the navigable airspace of the United States within this requirement of the use tax.

Navigable airspace is defined in the statute, § 4492(c)(3), by reference to § 101(26) of the Federal Aviation Act of 1958, 49 U.S.C. § 1301(26), which provides that " 'navigable airspace' means airspace above the minimum altitudes of flight prescribed by regulations issued under this Act, and shall include airspace needed to insure safe-

ty in take-off and landing of aircraft." The relevant regulation provides as follows:

[§] 91.79 *Minimum safe altitudes; general*

(a) *Anywhere.* An altitude allowing, if a power unit fails, an emergency landing without undue hazard to persons or property on the surface.

(b) *Over congested areas.* Over any congested area of a city, town, or settlement, or over any open air assembly of persons, an altitude of 1,000 feet above the highest obstacle within a horizontal radius of 2,000 feet of the aircraft.

(c) *Over other than congested areas.* An altitude of 500 feet above the surface except over open water or sparsely populated areas. In that case, the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle, or structure.

Federal Aviation Administration Regulations on General Operating and Flight Rules, 14 C.F.R. § 91.79.

## CONTENTIONS OF THE GOVERNMENT

The government advances two distinct theories in support of its requested finding that the taxpayer's planes were used in the navigable airspace of the United States so as to be subject to the statutory use tax. Adoption of either theory would provide an independent basis for affirming the result reached by the District Court.

The trial court's reasoning was on the inclusion of the "airspace needed to insure safety in taking off and landing" in the statutory definition of navigable airspace. This was the government's position at trial and the District Court followed it. It stressed the fact that any airplane that takes off or lands is subject to the use tax because it necessarily uses airspace needed to insure safety in taking off and landing. This is the position which the I.R.S. took in Revenue Ruling 71–716, 1971–1 Cum.Bull. 379. It provides as follows:

The definition of "navigable airspace" in the Federal Aviation Act of 1958 includes airspace needed to insure safety in takeoff and landing of aircraft. Under the Act a landing area is defined to mean *any* locality, either of land or of water including airports and intermediate landing fields, which is used, or intended to be used, for the landing and takeoff of aircraft, whether or not facilities are provided for the shelter, servicing, or repair of aircraft, or for receiving or discharging passengers or cargo.

Inasmuch as the statutory definition of "navigable airspace" does not contain a qualification that would exclude any airspace needed to insure safety in takeoff and landing of aircraft on public or private property, any taxable civil aircraft which takes off or lands in the United States has been used in the "navigable airspace of the United States" within the meaning of the statutory definition. The fact that an aircraft takes off and lands from exclusively private property is immaterial to the question of whether it had been used in the "navigable airspace of the United States."

▉ The ruling is concerned with the applicability of I.R.C. § 4491 (the use tax) to aircraft engaged in the business of agricultural spraying and crop dusting. Inasmuch as this is the opinion of the I.R.S., and while it is entitled to be considered in construing the statute, it is not binding and the court need not follow it if it thinks it is unreasonable. *Investment Annuity, Inc. v. Blumenthal,* 442 F.Supp. 681 (D.D.C.1977). *See Redwing Carriers, Inc. v. Tomlinson,* 399 F.2d 652 (5th Cir. 1968); *Service Life Ins. Co. v. United States,* 293 F.2d 72 (8th Cir. 1961).

This ruling is somewhat at odds with the definitive language in the statute relating to minimum altitudes of flight and makes that language unnecessary. However, it is not necessary for us to either approve or disapprove this rationale because the government has offered an alternative theory in connection with this appeal. This first appears in the answer brief of the government. No response was made objecting to it or seeking to answer it by the taxpayer. Since it makes much more sense

than the rationale that was submitted at trial, we have determined that it should be the basis for the affirmance of the judgment.

## ALTERNATE THEORY OF THE GOVERNMENT

 A theory now offered is that the taxpayer's operation of the plane below 500 feet is within the statutory definition of navigable airspace and subjects it to the tax. The argument is that I.R.C. § 4491 *et seq.*, sets up a statutory scheme for taxation of all aircraft which fly at the minimum safe altitudes. Any plane flying above the defined minimum safe altitude is within the statutory definition of navigable airspace. The regulation defining minimum safe altitudes allows flights at an altitude of 500 feet above the surface in other than congested areas, with an exception for flight over water or sparsely populated areas. In that case the only restriction in the regulation is that the aircraft may not be operated closer than 500 feet to any person, vessel, vehicle or structure. The taxpayer's aircraft operated below 500 feet over what is presumably a sparsely populated area and thus were above the minimum safe altitudes as defined by the regulation. The logical conclusion of this analysis is that the taxpayer's planes operated in the navigable airspace of the United States and are subject to the use tax.

The above construction of the statute provides the most logical analysis for resolving the issue presented. However, it was not presented to the trial court and was not the basis of that court's decision. The government raises the issue for the first time in its brief submitted to this court in response to the taxpayer's brief. The taxpayer did not address the argument in its initial brief and did not file a reply brief.

It is generally held that questions raised for the first time on appeal are not to be considered by an appellate court. *Youakim v. Miller*, 425 U.S. 231, 96 S.Ct. 1399, 47 L.Ed.2d 701 (1976); *United States v. Immordino*, 534 F.2d 1378 (10th Cir. 1976). This principle is relaxed somewhat where the question is one of law and failure to hear it results in miscarriage of justice. *Martinez v. Mathews*, 544 F.2d 1233 (5th Cir. 1976). The rule also loses its force where a new ground or reason for *affirming* a lower court ruling is advanced as opposed to a new basis for *reversing* a lower court. *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Helvering v. Gowran*, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *Spokane County v. Air Base Housing, Inc.*, 304 F.2d 494 (9th Cir. 1962).

Presumably, the taxpayer's operation of its planes at altitudes below 500 feet was in a legal manner and was over a sparsely populated area and not within 500 feet of any person, vessel, vehicle or structure. If such operation was not legal, it would be in violation of Federal Aviation Safety Regulation § 91.79, *supra*, which dictates the minimum altitudes of flight. The assumption appears logical in light of the facts stipulated, but the particular issue was not addressed in the lower court. The parties ignored the clause providing an exception for sparsely populated areas and apparently assumed that operation below 500 feet was not within navigable airspace. Under the statutory scheme, navigable airspace and minimum safe altitudes are synonymous and the only way the taxpayer could avoid operating its plane in navigable airspace would be to fly below the minimum safe altitude in violation of the regulation.

Both parties go on the assumption that the taxpayer was operating above the minimum safe altitude for sparsely populated areas. Accordingly, there is no factual issue before us on this, and the conclusion that necessarily flows is that the taxpayer operated its planes in the navigable airspace of the United States regardless of whether the operation was above or below 500 feet. Our conclusion, as a matter of law, is that the taxpayer, even though at times it operated below 500 feet, was flying within the navigable airspace of the United States as the same is defined by the minimum safe altitude regulation.

\* \* \* \* \* \*

The taxpayer's final attack on the assessment of the tax is based on the contention that the legislative history reveals a Congressional intent to exclude the taxpayer's aircraft from the tax.

The use tax on taxable civil aircraft was enacted at the same time and in connection with the Airport and Airway Development Act of 1970, 49 U.S.C. § 1701 *et seq.* It appears from the legislative history that the purpose of the enactment was to implement the expansion and improvement of the nation's airport and airway system. H.R.Rep.No.91–601, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin. News 3047, 3082. The legislative history refers to the taxpayer's theory that the purpose of the tax was to impose the primary financial burden of the airport and airway system on the users of that system. *Id.* at 3049, 3085; H.R.Conf.Rep.No.91–1074, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News 3101. Taxpayer contends that the subject aircraft do not use the national airport and airway system and thus were never intended to be embraced by the use tax.

It is unquestioned that the taxpayer's landing facility is private, that no public facilities or equipment are used there and that no government monies were used in developing or constructing the facility. Use of the federal navigation facilities is not, however, the test. Rather, the tax is more broadly applied to all aircraft which use the "navigable airspace of the United States." The Supreme Court has discussed this aspect of the aircraft taxing scheme in *Massachusetts v. United States*, 435 U.S. 444, 468, 98 S.Ct. 1153, 1167–1168, 55 L.Ed.2d 403 (1978):

> The formula contained in these three [taxing measures for civil aircraft] taken together does not, of course, give weight to every factor affecting appropriate compensation for airport and airway use. A probable deficiency in the formula arises because not all aircraft make equal use of the federal navigational facilities or of the airports that have been planned or constructed with federal assistance.

> But the present scheme nevertheless is a fair approximation of the cost of the benefits each aircraft receives. Every aircraft that flies in the navigable airspace of the United States has available to it the navigational assistance and other special services supplied by the United States. *And even those aircraft, if there are any, that have never received specific services from the National Government benefit from them in the sense that the services are available for their use if needed and in that the provision of the services makes the airways safer for all users.* (Footnotes omitted, emphasis added.)

Although the use tax was designed to place the major portion of the financial burden for aviation facilities on direct users, the statute was drafted for administrative purposes to apply to all aircraft which use the navigable airspace of the United States. The extent of the actual use of federal facilities is not the criterion.

The history of the statute indicates an intent to exempt use by a manufacturer, dealer, wholesaler or retailer for demonstration, testing or delivery purposes. H.R. Conf.Rep.No.91–1074, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code Cong. & Admin.News, I.R.C. § 3123. In 1976, an amendment was added to § 4492(a) granting an exemption from the tax to museum aircraft. The taxpayer argues that these exemptions imply an intent to exclude certain aircraft which do not make direct use of the national airport or airway system. However, it would be equally consistent to hold that the specification of certain exemptions indicates that others are excluded. *United States v. Jones*, 567 F.2d 965, 967 (10th Cir. 1977). The legislative history does not provide overwhelming support for the taxpayer's contention that Congress did not intend to tax the aircraft in question.

\* \* \* \* \* \*

## CONCLUSION

The sole position of the District Court was that the government's motion for summary judgment was to be granted on the basis that I.R.C. § 4491 imposes a use tax on

any taxable civil aircraft that takes off or lands in the United States. Such theory, although consistent with a literal reading of the statute, produces a somewhat illogical result. It renders superfluous the language in the statute which refers to minimum safe altitudes.

By far the better rationale in support of the trial court's judgment is that which is contained in the alternative theory of the government described above, which is that the taxpayer's planes were operated within the statutory definition of navigable airspace and therefore subject to the tax. This theory has been discussed in detail above. It seems a more logical basis than the first. We have concluded that it is proper to apply this theory inasmuch as it is purely a legal question.

The judgment of the district court is affirmed.