BRUNETTI, J.,
Dissenting.
Red Line Research Laboratories, Inc. (“Red Line”) appeals the district court’s affirmance of the bankruptcy court’s judgment in favor of Respondent Michael Sgobba (“the Marshal”). Red Line asserts that the Marshal erred in releasing monies levied on by Red Line and delivered to the Marshal. The district court concluded that, because a third party held a senior interest to the levied funds at the time the Marshal erred, Red Line could not demonstrate “actual damages” and therefore could not recover from the Marshal. I agree and respectfully dissent.
FACTS AND PROCEEDINGS BELOW
On November 4, 1994, Appellant Red Line obtained a judgment in the Superior Court of California against Naki Electronics, Inc. (“Naki”) in the amount of $75,203.24. Soon after the Superior Court issued a Writ of Execution, Red Line levied on an account receivable owed to Naki by Wal-Mart Stores, Inc. In December 1994, Wal-Mart tendered a check for the full amount to Respondent, then-acting Marshal of San Diego County, who returned the check to Wal-Mart because it lacked proper identification; Wal-Mart issued another check to the Marshal in January 1995. In February 1995, Union Bank, holder of a first priority security interest in Naki’s assets, filed a Third-Party Claim to the levied funds.
On March 27, 1995, prior to the release of the levied funds, Naki filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Between March 29, 1995, and April 21, 1995, Naki’s counsel wrote to the Marshal three times requesting release of the levied funds to Naki as trustee and debtor-in-possession; neither Red Line nor its counsel received copies of any of these requests. Following each of Naki’s first two written requests for release of the funds, the Marshal mailed a notice to the clerk of the bankruptcy court informing the court that the Marshal held the levied funds and asking for written instructions as to the funds’ disposition. According to the Marshal’s internal investigation, the Marshal spoke to a clerk in the bankruptcy court, who confirmed that no trustee had been appointed but that Naki was indeed the debt- or-in-possession. Then, on or about May 31,1995, after Naki’s third written request for the funds and without consent from Red Line or its counsel nor written order from the court, the Marshal released the funds to Naki. After learning that the Marshal no longer held the funds, Red Line’s attorney wrote two separate letters demanding an explanation of the Marshal’s action.
On November 20, 1995, on the day trial was to begin to adjudicate the rights of Red Line vis-á-vis Union Bank to the levied funds, Red Line and Union Bank an *16 nounced a stipulation, whereby Union Bank would withdraw its Third-Party Claim to the levied funds on the condition that Red Line would not dispute Union Bank’s interest in Naki’s assets in the Naki bankruptcy proceeding. The stipulation read into the record at the superiority hearing stated in its entirety:
That red line [sic] has a valid execution lien on the funds held by the marshal of San Diego county [sic] in the amount of $75,210.24 pursuant to a levy on or about November 30, 1994, and we are using a defined term from now on as “THE FUNDS” in capital letters from that point forward.
That the marshal of San Diego county [sic] released THE FUNDS to Naki Electronics, Inc. and that Naki has spent all the of THE FUNDS.
Finally, that as a result of Naki spending all of THE FUNDS, Union Bank withdraws its third party claim on condition that red line [sic] shall not assert, in the Naki bankruptcy proceeding, which is In re Naki Electronics, Inc., LA95-17734SB, a priority over Union Bank’s security interest in the assets of Naki.
Thereafter, on November 22, 1995, Red Line filed a formal claim with the San Diego Board of Supervisors to recover the levied funds, which the Board denied by operation of law in February 1996. This action followed.
On March 4, 1996, Red Line filed its complaint in the Superior Court of California, which the Marshal removed to the United States Bankruptcy Court: The bankruptcy court, in its Memorandum Decision of February 20, 1997, determined that the Marshal had erred in releasing the levied funds to Naki and was therefore liable to Red Line for the levied amount. The Marshal disputed such conclusion and appealed the bankruptcy court’s decision to the district court.
The district court agreed that the Marshal had erred in his handling of the levied funds, but disputed the bankruptcy court’s conclusion that such mishandling necessarily rendered the Marshal liable to Red Line; rather, the district court stated that the bankruptcy court should have considered whether Red Line had incurred “actual damages” under California Government Code section 26664, which provides that any sheriff who neglects or refuses to perform his or her duties is liable to the creditor for all actual damages sustained by the creditor. The district court disputed that Red Line had demonstrated such damages because the priority of interests between Red Line and Union Bank had yet to be determined when the Marshal erred; the court also rejected Red Line’s argument that Union Bank’s withdrawal of its third-party claim after the transfer of the funds to Naki would work to resolve the issue of Red Line’s ability to show damages. Rather, the court concluded that if, at the time of the Marshal’s transfer of the levy funds to Naki, Union Bank possessed superior interest in the funds, “Red Line, as a judgment creditor, has not suffered any cognizable damages under § 26664.” The district court therefore remanded the case to the bankruptcy court for an inquiry as to the priority of interests as of the date of the transfer and, in turn, Red Line’s ability to demonstrate “actual damages.”
At the remand hearing, the bankruptcy court noted that, in its brief, Red Line acknowledged that Union Bank had a senior secured lien. In response, the bankruptcy court agreed with the district court that Red Line could only succeed against the Marshal if Union Bank was over-secured as of the operative date: “[F]irst there’s got to be a damage calculation. If *17 Union Bank is undersecured, then Red Line as a matter of law cannot have been damaged by the conduct of the marshal and the case is over.” At that hearing, the bankruptcy court urged further discovery on the value of Naki’s assets vis-a-vis Union Bank’s security interest.
Upon subsequent cross motions for summary judgment, the bankruptcy court concluded that the “operative date,” by which to determine the value of Union Bank’s collateral, was May 31, 1995, the date the Marshal released the funds to Naki; however, the court also determined that a material issue of fact remained as to whether Naki’s assets would satisfy Union Bank’s secured interest, and therefore the court denied both parties’ motions for summary judgment.
The parties again filed cross motions for summary judgment as to the value of Naki’s assets as of the operative date. The court again concluded that a genuine issue of material fact remained as to the value of Naki’s assets and therefore set a date for trial. The court also noted that Red Line could not prevail under California Government Code section 26680’s damages provision because Red Line had not pled such cause of action in its complaint. Consequently, Red Line filed its First Amended Complaint on July 18, 2000, adding a fourth cause of action under section 26680.
At the bench trial on the value of Naki’s assets, the Marshal moved for judgment as a matter of law at the close of Red Line’s presentation of evidence. The bankruptcy court granted the Marshal’s motion, stating that Red Line was unable to demonstrate that Union Bank was over-secured as of the operative date; Red Line, therefore, had not proven that it incurred actual damages as a result of the Marshal’s neglect. Red Line appealed to the district court, which affirmed the bankruptcy court’s decision on the grounds that Red Line had not shown entitlement to the levied funds and therefore did not suffer actual damages. In so doing, the district court pointed out that
in Red Line’s first appeal, the District Court specifically found that Union Bank’s entitlement to the Levied Funds was dispositive of whether Red Line could recover. If Red Line disagreed with that finding, Red Line could have appealed the District Court’s decision to the Ninth Circuit. However, Red Line chose not to do so, and the instant appeal is not the proper arena in which to relitigate this issue. This Court must abide by its prior finding that Union Bank’s priority interest in the Levied Funds is relevant to the determination of Red Line’s rights.
From the district court’s decision, Red Line appeals to this court.
DISCUSSION
Although I agree with the majority that Red Line did not waive its right to appeal and that the Marshal erred as a matter of law in releasing the levied funds to Naki, I diverge from the majority in its conclusion that Red Line adequately demonstrated that it suffered actual damages as a result of the Marshal’s error.
Red Line argues that the district court erred in concluding that California Government Code section 26664 governs the Marshal’s liability to Red Line and, in turn, requires Red Line to demonstrate actual damages; instead, Red Line asserts that Government Code section 26680 controls. Under either statute, however, Red Line does not prevail.
Government Code section 26664 provides:
Any sheriff who neglects or refuses to perform the duties under a writ of at *18 taehment, execution, possession, or sale, after being required by the creditor’s attorney of record or, if the creditor does not have any attorney of record, by the creditor and after the sheriffs fees have been paid or tendered, is liable to the creditor for all actual damages sustained by the creditor.
(Emphasis added.)
Section 26680, in turn, provides:
If on demand the sheriff neglects or refuses to pay over to the person entitled any money which comes into his hands by virtue of his office, after deducting all legal fees, the person may recover the amount thereof and 25 percent damages and interest at the rate of 10 percent a month from the time of demand.
(Emphasis added.)
Red Line argues that section 26664 is general in nature and simply creates liability for a marshal’s general dereliction of duty, whereas section 26680 provides the specific remedy when a marshal refuses to pay over monies due to an entitled person. To support its contention, Red Line refers to the well known maxim that general language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment. United States v. Chase, 135 U.S. 255, 260, 10 S.Ct. 756, 34 L.Ed. 117 (1890).
Regardless of whether section 26664 or section 26680 controls, however, the district court was correct in concluding that Red Line was not entitled to redress from the Marshal. Liability under section 26664 is specifically predicated on a showing of “actual damages” whereas recovery under section 26680 requires that the claimant show that he was the “person entitled any money” demanded of the Marshal. Red Line can make neither showing.
Red Line does not assert on appeal that its interest was ever superior to Union Bank’s nor that the bankruptcy court erred in finding that Union Bank was under-secured at the time of the Marshal’s error. Rather, Red Line argues that Union Bank’s withdrawal of its third-party claim should be deemed the equivalent of a denial of such claim, and, therefore, it argues, upon Union Bank’s withdrawal, Red Line was immediately entitled to payment of the levied funds to satisfy its judgment. Red Line posits that “[i]t makes no difference at what point in time Red Line is determined to have ‘prevailed’ as the result is the same: the Marshal’s failure to await an order of the Superior Court at the conclusion of the third party claim proceedings deprived Red Line of its right” to the levied funds.
The cases Red Line cites for the proposition that a party’s withdrawal of its motion equals a denial of such motion entail circumstances vastly different from the situation at hand. In O’Donnell v. Municipal Court of Monterey County, 207 Cal. App.3d 714, 255 Cal.Rptr. 31 (1989), the California Court of Appeal deemed the party’s withdrawn motion to vacate judgment and for a new trial as denied “for purposes of court rules which extend the time to notice the appeal until 15 days after the trial court denies such motions.” Id. at 717, 255 Cal.Rptr. 31. Similarly, in Rolen v. Rhine, 117 Cal.App.3d 23, 172 Cal.Rptr. 456 (1981), which involved the construction of a nearly identical court rule governing the time in which to file an appeal, the court deemed a party’s withdrawn motion to vacate judgment as denied for purposes of the language conferring the extension of time. Id. at 26, 172 Cal.Rptr. 456. These holdings are inapposite and therefore do not assist Red Line.
Moreover, the Marshal correctly points out that the withdrawal of Union Bank’s *19 third-party claim did not extinguish Union Bank’s superiority in the levied funds because Union Bank did not need to bring a third-party claim to perfect its rights. As the California Court of Appeal explained:
The third party claim procedures are optional and the third party does not waive a superior interest in the property levied upon by failure to make such a third party claim. [Citations.] This principle is a corollary of the general rule a judgment or levy reaches only the interest of the debtor in the property because a judgment creditor can acquire no greater right in the property levied upon than that of its judgment debtor. [Citations.]
Regency Outdoor Advertising, Inc. v. Carolina Lanes, Inc., 31 Cal.App.4th 1323, 1329-30, 37 Cal.Rptr.2d 552 (1995) (emphasis added).
It is true that Union Bank, by stipulation, withdrew its third-party claim to the funds, but Union Bank did not subrogate its perfected interest to Red Line and, therefore, never waived its senior interest in the levied funds. Moreover, the stipulation expressly states that Union Bank withdrew its third-party claim “as a result of Naki spending all of the funds.” Thus, it can be fairly inferred that the only reason Union Bank withdrew its claim is because the levied funds Union Bank initially laid claim to were now part-and-parcel of the bankruptcy estate by virtue of the Marshal’s release of the funds to Naki; in other words, the stipulation makes clear that it was only because there was nothing left to fight over that Union Bank agreed to withdraw its claim to the levied funds and pursue whatever value remained in Naki’s bankruptcy estate. Red Line’s argument, therefore, that it suffered damages despite not having a priority interest in the levied funds at the time of the Marshal’s error fails.
In sum, I agree that the Marshal erred in releasing the funds to Naki; however, as noted, because Union Bank’s superior interest stood between Red Line and the levied funds at the time the Marshal made that mistake, Red Line incurred no actual damages from the Marshal’s error nor was Red Line ever the party entitled to the funds. I would therefore affirm the district court’s decision.