**SERVICE LIFE INSURANCE COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. 0450.**

United States District Court
D. Nebraska.
Aug. 11, 1960.

David E. Beber, Omaha, Neb., for plaintiff.

Jerome Hertz, Dept. of Justice, Washington, D. C., and Thomas J. Skutt, Asst. U. S. Atty., Omaha, Neb., for defendant.

ROBINSON, Chief Judge.

This is a suit for the recovery of corporate income taxes in the total amount of $28,645.41, paid by the plaintiff for the calendar years 1949, 1950, 1952 and 1953, together with statutory interest.

The basis of the claim for refund by the plaintiff is that certain interest payments made by plaintiff in each of the years in question were proper deductions from its taxable income as investment expense under Section 201(c)(7)(B) of the 1939 Internal Revenue Code, 26 U.S.C.A. § 201(c)(7)(B), but were improperly disallowed upon audit of plaintiff's income tax return. On its returns filed for the years 1949, 1950 and 1952, plaintiff, in reporting the amount of interest received as part of its gross income, reduced the amount of interest received by the amount of the interest that it had paid on borrowed moneys.

However, for the year 1953 plaintiff showed the full amount of interest received and then deducted the interest paid on borrowed money as part of its investment expense. Upon audit of the returns, the interest paid on borrowed money during 1949, 1950 and 1952 was added to the income for those years, and the interest paid during the year 1953 was disallowed as a deduction. Plaintiff thereafter instituted this action.

In its complaint, plaintiff alleged that it was, during each of the relevant years, a "life insurance company as defined by Section 201 of the Internal Revenue Code", 1939, and that it was entitled to the interest deduction.

The position of the Government is that the plaintiff was not a life insurance company during the years involved; that its entire income tax liability should be recomputed under the provisions applicable to ordinary corporations and; that plaintiff is entitled to a refund only if such recomputation indicates that the plaintiff has nevertheless overpaid its income taxes. The Government further contends that if plaintiff is held to be a life insurance company during the years in question then it, nevertheless, is not entitled to a refund for the reason that the interest paid did not constitute an investment expense under Section 201(c)(7)(B) of the 1939 Internal Revenue Code.

The questions presented are: (1) Was plaintiff a life insurance company as defined in Section 201(b), Internal Revenue Code, 1939, during each of the years in question, and (2) Is interest paid on moneys borrowed, which moneys were productive of income reported as taxable

income, deductible as an investment expense under Section 201(c)(7)(B), Internal Revenue Code.

■ The Commissioner assessed deficiency taxes on the plaintiff on the theory that, being a life insurance company, the plaintiff was not entitled to the deduction that it claimed for interest paid. This deficiency assessment is prima facie evidence of liability for the tax and plaintiff has the burden of proving that the interest item was an allowable deduction.

■ In this case the Commissioner originally assessed deficiency taxes on the theory that, being a life insurance company, plaintiff was not entitled to the deduction that it claimed for interest paid. In its answer filed in this suit for refund the Government contends that the plaintiff is not a life insurance company and, therefore, is not entitled to the deduction for interest paid. The burden of proof on the issue which the Government has affirmatively raised, that is whether plaintiff was a life insurance company as defined in the Internal Revenue Code, 1939 during the periods in question, rests upon the Government. "The Commissioner must properly plead and prove any such alternative issue * * * which is upon a new theory different from and inconsistent with his determination of the deficiencies. Hull v. Commissioner, 4 Cir., 87 F.2d 260, 261; Estate of Hibbs, 16 T.C. 535;" Tauber v. Commissioner, 24 T.C. 179, and cases cited there.

Section 201(b) of the Internal Revenue Code, 1939, defines a life insurance company as follows:

"(b) *Definition of Life Insurance Company.* When used in this chapter, the term 'life insurance company' means an insurance company which is engaged in the business of issuing life insurance and annuity contracts (either separately or combined with health and accident insurance), or non-cancellable contracts of health and accident insurance, and the life insurance reserves (as defined in subsection (c)(2)) plus unearned premiums and unpaid losses on non-cancellable life, health, or accident policies not included

in life insurance reserves, of which comprise more than 50 per centum of its total reserves. For the purpose of this subsection, total reserves means life insurance reserves, * * * and all other insurance reserves required by law. * * *"

■ The term "insurance company" is not defined in the statute. The applicable regulation, Treasury Regulation 118, Section 29.3797-7, states in substance that the character of the business done in the taxable year determines whether it is taxable as an insurance company under the Internal Revenue Code. Furthermore, "The taxpayer is entitled to have § 201(a) liberally construed in determining whether it is a life insurance company within its terms". Commissioner v. Swift & Co. Employees Benefit Association, 7 Cir., 151 F.2d 625, 628.

Plaintiff was incorporated under the insurance laws of the State of Nebraska and during the years in issue here it engaged in the business of issuing life insurance, annuity, and health and accident insurance policies. In 1938 plaintiff's board of directors authorized it to become a member of the Federal Home Loan Bank under the provisions of Section 8-711-8-715, Revised Statutes of Nebraska, 1943, as amended. These sections expressly authorize any insurance company not only to make loans insured by the Federal Housing Administration, but also to become a member of the Federal Home Loan Bank and (1) purchase stock in, (2) obtain advances from, and (3) pledge collateral as security for advances from such Federal Home Loan Bank.

During each of the years in question, plaintiff was engaged in soliciting and issuing life, health and accident policies and in investing and managing the premiums derived therefrom. During those years plaintiff also engaged in soliciting and arranging mortgage loans to be made with money borrowed from the Federal Home Loan Bank on the security of mortgages insured by the Federal Housing Authority and the Veteran's Administration.

During the year 1949, plaintiff had 19,770 outstanding life insurance policies, with a total face value of $23,264,974, and 16,901 health and accident policies, on which it received gross premiums of $674,806. It had a total income-producing assets of $12,596,630 during that year. Its total policy reserve amounted to $6,468,224, or 51% of its income-producing assets. 45% of plaintiff's income-producing assets for the year 1949 were assets acquired with funds borrowed from the Federal Home Loan Bank. The assets acquired with borrowed money produced income of $268,094. During the year 1949, plaintiff had outstanding 1,974 mortgage loans.

For the year 1950, plaintiff had outstanding 18,762 life insurance policies with a total face value of $22,494,503, and 17,934 health and accident policies. During that year it had total income-producing assets of $12,426,814. Its total policy reserves equalled $6,470,247, or 52% of its income-producing assets, and approximately 46% of its assets had been acquired with borrowed money. For the year 1950, in addition to its premium receipts and its interest income, plaintiff derived profit on the sale of mortgage loans in the amount of $167,308.76; mortgage service fees of $45,199.42; and mortgage fees and commissions of $18,835.70.

In 1952 plaintiff had outstanding 18,029 life insurance policies in the total face amount of $22,120,496, and 52,879 health and accident policies in the total face value of $1,777,750. Plaintiff had income-producing assets of $11,527,916 and its insurance reserves equalled $6,935,322, or 60% of its income-producing assets. Approximately 43% of its income-producing assets had been acquired with borrowed money. Those assets produced income of $209,558 and the remaining assets produced income of $261,016.

In 1953, plaintiff had outstanding 17,327 life insurance policies in the face amount of $22,050,895 and 46,465 health and accident policies. Plaintiff had income-producing assets of $11,341,265 of which $7,092,710 were held as reserves against policy liabilities. Assets acquired with borrowed money ($4,495,125) accounted for 40% of the total. Assets acquired with borrowed funds produced income of $185,399 and other assets produced income of $259,863. In 1953, $7,788,000 of plaintiff's assets consisted of 1,623 mortgage loans of which approximately 53% had been acquired with borrowed funds.

During the years in question here, life insurance companies were required to include in their gross income for income tax purposes only their income from interest, dividends and rents, and they were permitted deductions which, although designed to exempt from tax such income as had to be added to reserves to meet future policy claims, had the effect of exempting from tax substantial additional amounts of income from the designated sources or taxing such limited income at low rates. As a result of this tax treatment life insurance companies did not have to include in gross income items such as fees and commissions, capital gains and whatever profit they might make on the underwriting portion of their business. They were permitted reserve deductions in excess of actual reserve requirements; for the years 1952 and 1953 they paid tax on their designated net income at the rate of 3¾% for amounts under $200,000 and 6½% of amounts in excess of $200,000. Internal Revenue Code, 1939, Section 201; Revenue Act of 1951, Section 336.

The government contended that the plaintiff was not entitled to the beneficial tax rates, deductions and the limited definition of gross income during the period in question. It was the government's position that the borrowing of funds for the purchase of income producing assets was not a part of the business of life insurance, and that the income earned on such assets was not insurance company income.

However, as has been pointed out, it is not any percentage of income that determines whether a company is taxable as an insurance company but rather the charac-

ter of the business actually done by the company. Plaintiff's business activity, as reflected by its income, was as follows:

| Year | Total Income | Premium Income | Investment Income |
|------|------|------|------|
| 1949 | $1,160,181 | $ 674,806 | $485,366 |
| 1950 | 1,154,319 | 658,263 | 496,057 |
| 1952 | 1,527,781 | 1,057,207 | 470,575 |
| 1953 | 2,120,278 | 1,675,017 | 445,262 |

The insurance activity of the plaintiff was as follows:

| Year | Life Policies | Health & Accident Policies | Premium Income | Benefits Paid | Life Insurance In Force |
|------|------|------|------|------|------|
| 1949 | 19,770 | 16,901 | $ 674,806 | $ 550,621 | $23,264,974 |
| 1950 | 18,762 | 17,934 | 658,263 | 515,088 | 22,494,503 |
| 1952 | 18,029 | 52,879 | 1,057,207 | 895,493 | 22,121,496 |
| 1953 | 17,327 | 46,465 | 1,675,107 | 1,261,051 | 22,050,895 |

A breakdown of plaintiff's investment income for each of the years in question is as follows:

| Year | Total Investment Income | Income from Mortgages possible Through Federal Home Bank Loans |
|------|------|------|
| 1949 | $484,366 | $210,711 |
| 1950 | 496,057 | 236,004 |
| 1952 | 470,575 | 202,863 |
| 1953 | 445,262 | 179,492 |

During the years in issue here plaintiff had over $22,000,000 worth of life insurance on its books; over 70,000 individual policies in force; and approximately $1,675,000 in premium income. The number of mortgage loans carried on its books during the same period varied from 1,623 to 1,974 and many of these mortgages were made without the intervention of borrowed funds. From a consideration of all of the evidence presented in this case the Court has concluded that the actual character of the business done by plaintiff during the years in question was the solicitation, sale, issuance and servicing of insurance policies, and plaintiff was therefore a life insurance company within the meaning of the Internal Revenue Code of 1939.

The government contends that, in any event, the plaintiff has failed to establish that it is entitled to a deduction for the interest paid to the Federal Home Loan Bank as an investment expense under Section 201(c)(7)(B) of the Internal Revenue Code of 1939, as amended. The parties have not cited, nor has the Court found, a judicial decision on the precise point involved here.

Section 245(a)(5) of the Revenue Act of 1921 provided a deduction for investment expense and Section 245(a)(8) pro-

vided for a separate deduction for interest paid on indebtedness. Such a separate deduction for interest paid, in addition to a deduction for investment expense, was continued in each of the successive Revenue Acts from 1921 through the taxable year 1941. For taxable years beginning in 1942 Congress removed the deduction for interest paid and substituted a "reserve and other policy liability credit" which, the government contends, was intended to be in lieu of prior deductions for reserve for deferred dividends, interest paid, and certain other reserves. The amount of the special credit was to be a figure announced by the Secretary of the Treasury each year, based upon industry-wide statistics as reported on the tax returns of all insurance companies for the previous year. Sections 201, 202 and 203, Internal Revenue Code, 1939, as amended by Section 163(a), Revenue Act of 1942.

The Senate Finance Committee explains this credit as follows:

"In order to arrive at an equitable solution of the proper amount to be allowed as a deduction for the earnings needed to maintain the reserves, the bill provides that a 'reserve and other policy liability credit' be substituted for the present reserve earnings deduction, *the deduction for interest paid,* and the deduction for deferred dividends. * * * The percentage is to be the same for all companies and is to be determined on the basis of the aggregate deductions of all companies for reserve earnings, interest paid, and deferred dividends." S.Rep. No. 1631, 77th Cong., 2d Sess., p. 143 (1942–2 Cum.Bull. 504, 610).

This credit in lieu of an interest deduction was effective, with a minor modification (Revenue Act, 1950, Section 401(b)), for the years 1949 and 1950. On its return for those years, plaintiff claimed such credit in arriving at its adjusted normal-tax net income, the figure which represented the taxable income of life insurance companies for those years.

The Court is in agreement with the government that the statute substituted the reserve credit for an interest paid deduction; that such substitution was not optional with the plaintiff; and that the plaintiff was not entitled to any separate deduction for interest paid on indebtedness for the years 1949 and 1950.

The Revenue Act of 1951, Section 336 (b) further amended the provisions of the Internal Revenue Code relating to the taxation of life insurance companies. Instead of the uniform formula deduction provided under the prior statute, life insurance companies now were to compute taxable income by adding to net income eight times the adjustment for the reserve provided in Section 202(c), and subtracting a new reserve interest credit, if any. The reserve interest credit was to be computed with reference to three items, including interest paid. Internal Revenue Code, 1939, Section 203A.

The only provision made by Congress under the amended statute for interest paid was in connection with the reserve interest credit. Based upon its returns for 1952 and 1953, plaintiff was not entitled to a reserve interest credit and, in the Court's opinion, was not entitled to a deduction for interest paid on indebtedness under any other provision of the statute.

Deductions are a matter of legislative grace and no taxpayer is entitled to a deduction unless he brings himself clearly within the language and intent of the statute. White v. United States, 305 U.S. 281, 292, 59 S.Ct. 179, 83 L.Ed. 172. The Congress had not considered interest paid on indebtedness to be a part of investment expense within the provisions dealing with life insurance companies, and has in fact by statute set forth the credits that shall be taken by life insurance companies in lieu of deductions such as interest paid on indebtedness.

The foregoing shall constitute the Court's findings of fact and conclusions of law under Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. Judgment

will be in favor of the defendant dismissing the plaintiff's complaint. Counsel for the defendant will prepare and submit a form of judgment within 20 days.