Carl W. RENSTROM and Elizabeth A. Renstrom, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 01512.

United States District Court
D. Nebraska.

July 3, 1963.

---

4. This ruling does not reach the issue of whether Louisiana law is applicable to all the payments in issue.

E. S. Garvey and James R. McGreevy, Omaha, Neb., for plaintiffs.

Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., for defendant.

VAN PELT, Judge.

This suit, brought to recover alleged overpayment of income taxes for the years 1953, 1954, 1955, 1957 and 1958, has been submitted to the court on stipulated facts and briefs and is now ready for decision. Carl W. Renstrom and Elizabeth A. Renstrom will be referred to collectively in the singular.

Under a divorce decree entered on January 22, 1953, plaintiff Carl W. Renstrom, became obligated to make monthly payments to his former wife, Catherine A. Renstrom, totaling $138,000.00, and extending over a period of eleven years. The taxpayer was required to pay her $1,500 per month or $18,000.00 per year for each of the first six years and $500.-00 per month or $6,000.00 per year for each of the next five years. As will be seen, the fact that the payments in the first six years are much larger than those in the last five years creates the problem before the court. The divorce decree which incorporated an agreement between Carl W. and Catherine A. Renstrom, also obligated Carl to furnish for Catherine a home of her own choosing at a cost not to exceed $35,000.00; which home was to be turned over to her within six months after the decree. Shortly after the decree was entered Carl Renstrom caused to be conveyed to Catherine a home purchased by him for $35,000.00. Insofar as is material to a decision herein, he made the monthly payments required by the decree.

Section 71 of Title 26 of the United States Code (the 1954 Internal Revenue Code) provides in substance that certain described payments made to a woman pursuant to a divorce decree are deductible by the former husband and taxable to the woman. Subsection (c) thereof provides:

"Principal sum paid in installments.—

"(1) General rule.—For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments.

"(2) Where period for payment is more than 10 years.—If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received."

Section 215 of the 1954 Code provides in substance that a husband shall be allowed to deduct from his gross income such amounts as are, by Section 71, rendered includable in the gross income of the wife.[1]

Plaintiff's contention is that the term "principal sum" as used in Section 71 (c) is $173,000.00 in this case and includes both the value of the house transferred and the installment payment obligation of $138,000.00. The defendant's contention, on the other hand, is that the words refer only to the $138,000.00 installment payment obligation.

The taxpayer deducted only $13,800.00 of the alimony payments made in each

of the years involved and filed timely claims for refunds, which were all disallowed in full by the District Director of Internal Revenue at Omaha, Nebraska.

Both parties concede that they have found no authority directly on point and the research of the court has disclosed none. The taxpayer concedes that "Mr. Renstrom would [not] have been entitled to deduct as alimony the $35,000.00 paid for the house" and that "this amount, being payable in the year of divorce, cannot qualify as a periodic payment." Baer v. Commissioner of Internal Revenue, 8 Cir., 196 F.2d 646, so held.

At the outset we are met with petitioner's contention that the burden is on the government to establish that the plaintiff is not entitled to the refund and that the burden is not on the plaintiff to establish that he is. Plaintiff's contention in substance seems to be that, because (1) deductions under Section 215 are tied to and dependent on Section 71, and (2) the Supreme Court, in Commissioner of Internal Revenue v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 and other cases, has broadly construed and applied the term "gross income", the burden has thereby shifted from the plaintiff to the defendant.

▇ The Court of Appeals for the Eighth Circuit said in Norton v. Commissioner of Internal Revenue, 192 F. 2d 960:

"As the claim is for a deduction from income for federal income tax purposes the deduction is allowable only as a matter of legislative grace and the burden is upon the person claiming a deduction to bring himself squarely within the provisions of the statute under which such deduction is claimed." (192 F.2d 961–962)

1. Insofar as we are concerned in this case, the 1939 Internal Revenue Code, as amended, in effect when the divorce decree in this case was rendered, treated the alimony deduction as it is treated by the 1954 Code. Section 22(k) of the 1939 Code corresponds to section 71 of the 1954 Code and section 23(u) of the 1939 Code corresponds to section 215 of the 1954 Code.

There the taxpayer contended that he was entitled to deduct as a "periodic payment" a payment of $5,000.00 made to his wife pursuant to an agreement between them entered prior to the divorce decree and not referred to therein. The Norton case came to the Court of Appeals on a petition to review an adverse decision of the Tax Court of the United States. It seems clear that if the burden was on Mr. Norton it should certainly be on the taxpayer here after he has paid the disputed tax and sues in the district court for a refund. It is elementary that a taxpayer suing for a refund has the burden to show that the revenue service determination is erroneous and that the taxpayer is entitled to a refund. See 10 Mertens, Federal Income Taxation, § 58A.01, Service Life Ins. Co. v. United States, D.Neb., 189 F.Supp. 282, affirmed 8 Cir., 293 F.2d 72 and Industrial Aggregate Co. v. United States, 8 Cir., 284 F.2d 639. Nothing in Glenshaw Glass Co., supra, indicates that this universally recognized general rule, which was applied in Norton, supra, to a taxpayer's attempt to have a revenue service denial of the alimony deduction reversed, has undergone alteration of the character suggested by plaintiff.

Metcalf v. C.I.R., 1 Cir., 271 F.2d 288, a post-Glenshaw Glass Co. case, indicates that the burden of establishing that the Internal Revenue Service improperly denied a claimed alimony deduction is still on the plaintiff. In that case the taxpayer and his wife before their divorce entered into an agreement whereby the husband was to pay the wife $150.00 weekly; the agreement, when most fairly construed, fixed $125.00 as child support. The Court of Appeals held that the burden of proving that the agreement was superseded by the subsequent divorce decree was on the taxpayer. The taxpayer was attempting to show that a larger portion of each payment was attributable to "alimony" rather than child support and thus increase his deductions.

As background for the discussion of the merits of the issue involved, it should be noted that none of the payments made by the plaintiff pursuant to the divorce decree qualify as "periodic payments." To be periodic the cases say that the payments must be indefinite in amount or number (duration). The required indefiniteness is supplied if the payments are conditioned on the death of either spouse, the remarriage of the wife, or a change in the economic circumstances of either. 1 Prentice-Hall, Federal Taxes § 7710. The installment payments involved in this case, as far as the record shows, do not possess the required indefiniteness. The installment payments involved in this case, in the language of the statute, "shall be considered" (§ 22(k) of the 1939 Code) or "shall be treated" (§ 71 of the 1954 Code) as "periodic payments" because they are required to be made over a period longer than ten years. Thus it may be seen that this is a technical statute and taxes "alimony" payments to the wife and combines with Section 215 to allow a deduction to the husband only when its technical requirements are met.

We must not lose sight of the fact that we are traveling a two-way road; if the deduction is allowed to the husband a corresponding increase in the income of the wife results. Prior to 1942 the husband was not given any deduction for alimony payments; we should not ascribe to the Congress which enacted the 1942 Revenue Act an intention to change the law any more than is warranted by the language of the statute and its legislative history.

A careful examination of the statute is called for. Subsection 71(c) (1) says " * * * installment payments discharging a part of an obligation the principal sum of which is * * * specified in the decree, [etc.] shall not be treated as periodic payments." Subsection 71(c) (2) says "If * * * the principal sum referred to in paragraph (1) is to be paid * * * over * * * more than 10 years * * * then * * * the installment payments shall be treated as periodic payments * * *

only to the extent of 10 percent of the principal sum." It seems to the court both logically and grammatically that the term "principal sum" was intended to refer to the total of the installment payments. Unless plaintiff's contention is adopted, nowhere in the section is there any reference to anything other than installment payments, whether they be "periodic", "treated as periodic" or neither, in which event they are not taxable to the wife or deductible by the husband. These subsections are oriented entirely to such installment payments.

■ Arguably, the words "a part" in subsection (1) imply that the "principal sum" may include "alimony" such as the house furnished by plaintiff to his wife. The court believes, however, after examining the statute and legislative history, that those words only recognize that each installment payment only discharges "a part" of the total installment payment obligation. The boldface heading of subsection (c) is "Principal sum paid in installments." While the heading is not technically part of the statute it has some probative value. The court has a good deal of trouble visualizing or logically considering the conveyance of the $35,000.00 house as an installment payment in the sense that each $1,500.00 and $500.00 payment is an installment payment. It should be noted in this connection that the house and the installment payment are treated separately in the divorce decree. This detracts from any contention that the house was one in a series of installment payments. This conclusion is supported by the following language taken from H. Rep. No. 2333, 77th Cong., 2d Session, 1942-2 Cum. Bull. p. 372, 428:

"An *installment payment* is considered to be a *periodic* payment * * * unless the *principal* sum of the *obligation* being *discharged in part by such installment payment* is * * * required to be paid within a period ending not more than 10 years from the date of such decree or instrument or such

installment payment is in fact 10 per cent or more of such principal sum." (emphasis supplied)

Note the use in Section 71(c) (2) of the language "If * * * the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, * * * then * * * the installment payments shall be treated as periodic * * * only to the extent of 10 percent of the principal sum." This clearly shows the orientation of the section to installment payments; incorporation into that language of a house valued at approximately one-fifth of the total property given the wife by the decree would do violence to the intention of Congress.

The plaintiff contends that all the property that passes from a husband to a wife is "alimony" and should be considered as a part of the "principal sum". Inherent in his contention is the proposition that, where bunching of larger alimony payments in certain years renders it advantageous, the taxpayer is entitled to deduct a portion of the total provided for in the decree which would not otherwise be deductible. The court is convinced that one reason for the inclusion in the statute of the ten per cent limitation was to prevent such bunching of payments into any one year and thus increasing the deduction for that year. Assuming for the sake of discussion that the conveyance of the house is "alimony", the taxpayer realizes that all alimony is not income to the wife nor deductible by the husband. Installment payments of a definitely fixed principal sum are not even partially deductible where they are payable over a ten year period or less.

■ The court believes that the conveyance of the house, which was provided for in the agreement and in the decree which incorporated the agreement, and which took place shortly after the divorce, was more in the nature of a division of property. In Norton v. Commissioner, 16 T.C. 1216, 1218, affirmed

8 Cir., 192 F.2d 960, the Tax Court said:

> "We may, we think, take judicial notice that divorce settlements or decrees not uncommonly provide some considerable amount payable immediately to the wife, in addition to regular or recurring payments for current support thereafter. We consider it reasonable to believe that Congress had such a practice in mind and did not intend to make the wife taxable upon the lump sum, original, or principal payment to be made here, but that it was something in the nature of division of capital, rather than from the husband's income so as to be deductible by him."

See to the same effect 5 Mertens, Federal Income Taxation, § 31A.03.

In the light of the history of alimony taxation and deductibility, these observations seem sound. Under the law as it existed prior to 1942 many husbands had little left after they made their alimony and income tax payments; for this reason Congress decided to allow annual deductions to offset all or a portion of the husband's income that goes to a divorced wife.[2] This reasoning applies with much less force, if at all, to large payments of money or property made immediately after the divorce. In most cases such payments are made out of property which has theretofore been accumulated by the couple and is in that sense unrelated to the income of the husband earned after the divorce.

If the plaintiff's contention is correct then the difference between the deductions allowed plaintiff and the deductions claimed by him should have been taxed to his former wife. There is nothing in the policy act which indicates an intention to tax a divorced wife on property which has so many of the characteristics of a property settlement or division. It would also seem anomalous to say that the former Mrs. Renstrom's 1958 gross income should be increased by $3,500 attributable to a house she received under a divorce decree entered into in 1953.

The editors of a leading tax service have adopted the government's position. In 63–1 CCH Federal Tax Reporter, Par. 820.03, the following appears:

> "*To make the transfer of property deductible as alimony,* the transfer must be made as one or more of a series of qualified periodic alimony payments. But where property is transferred as part of an installment payment in discharging a 'principal sum' over *more* than 10 years, the 10% limitation may cause a large part of the alimony benefits to be lost in the year the property is transferred.
>
> "Example (2): A divorce decree and property settlement agreement provide that the wife is to receive the family home (which was owned by the husband and cost $20,000, but is worth $30,000), plus $50,000 alimony which will be paid annually over a period ending more than 10 years later. The 10% limitation is based on the $50,000, so the husband gets aggregate alimony deductions of only $50,000. No deduction for the $30,000 value of the house is allowable. He has a $10,000 gain on the transfer of the house."

The court concludes that the plaintiff has not carried the burden of proving that he is entitled to deductions in connection with the alimony payments other than those originally claimed. A separate order disposing of the matter will be entered.

2. See H.Rep. No. 2333, 77th Cong., 2d Sess., 1942–2 Cum.Bull. p. 372, 409.