F. Harold Van Orman, Jr. and Jeanne L. Van Orman v. Commissioner.
Van Orman v. Commissioner
Docket No. 5168-66.
United States Tax Court
T.C. Memo 1968-267; 1968 Tax Ct. Memo LEXIS 30; 27 T.C.M. (CCH) 1440; T.C.M. (RIA) 68267; November 25, 1968. Filed *30 Where a written agreement made incident to a divorce decree provided, in part, that the husband was to purchase a new residence for his wife of her selection under $40,000 and deliver title thereto within 10 years from the date of the decree, held, on the facts, the payments made by the husband in respect to his indebtedness to purchase this residence were not periodic payments of alimony includable in the gross income of the wife under section 71 of the I.R.C. of 1954 and deductible by the husband under section 215(a) of such Code. Jerome B. Van Orman, for the petitioners. Eugene P. Bogner, for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1962 and 1963 in the amounts of $7,243.21 and $3,620.22, respectively. Petitioners concede all adjustments made by respondent except those made in respect to deductions taken for the years 1962 and 1963 under section 215(a) of the Internal Revenue Code of 1954. [1] The only issue to be decided is whether payments made by petitioners toward the purchase of a home and for insurance thereon are to be considered periodic payments within the meaning of section 71 and as such deductible under section 215(a). *32 All of the facts are stipulated and they are so found. F. Harold Van Orman, Jr. (hereinafter referred to as petitioner) and Jeanne L. Van Orman are husband and wife residing at the time they filed the petition in this proceeding at Fort Wayne, Indiana. Petitioner and his wife filed joint income tax returns for the years 1962 and 1963 with the district director of internal revenue at Indianapolis, Indiana. Prior to his marriage to Jeanne L. Van Orman, petitioner was married to Rae Van Orman. Petitioner and Rae were married on January 24, 1954, and they had two children: Cydney and Lisa, aged 5 years and 14 months, respectively, on April 28, 1960. Rae had a child of a previous marriage, Denny, age 17 as of April 28, 1960, who also lived with her and petitioner during their marriage. On April 28, 1960, while an action for divorce was pending between them, petitioner and Rae executed a written instrument entitled "Property Settlement Agreement". On the same date a decree of absolute divorce giving Rae custody of the children and incorporating the written instrument was entered in Allen Superior Court No. 3, in the State of Indiana, dissolving the marriage. The agreement of April 28, 1960, provides, *33 in part, as follows: * * * 1. The defendant [Rae] herein shall be adjudged the owner of such household goods, furnishings and equipment now located in the residence of the parties as she may select for the furnishing and equipment of a new residence to be 1441 occupied by her and the minor children of the parties and which residence it is contemplated shall consist of not less than three bedrooms, kitchen, living room, baths and dining facilities, and said furnishings shall be free and clear of encumbrances. * * * 5. Plaintiff agrees to procure and supply a new home for the use and benefit of the defendant and minor children at time present residence is sold in the manner and subject to conditions as follows: (a) Purchase price of such new home shall not exceed $40,000.00. (b) Plaintiff will pay only all real estate taxes, municipal assessments, insurance on real estate, major repairs to furnace or plumbing until title is delivered and will have the exterior of said home painted not to exceed three times until title is delivered to the defendant. (c) Plaintiff shall make arrangements for the securing of said home at his expense and making of payments thereon and shall *34 deliver title to said home to the defendant on or before the expiration of ten years from the date of the granting of a divorce herein at which time said real estate shall be free and clear of all liens and encumbrances of every kind, nature and description except current taxes and said home shall become the sole and absolute property of the defendant. * * * Paragraph 7 of the contract provided petitioner would pay support for the children ranging from $400 to $600 a month and paragraph 8 of the contract provided petitioner would pay alimony to Rae, ranging from $1,300 to $900 a month for a period of 10 years and 1 month with provision for further reduction if petitioner's annual income was reduced to $25,000 or below and provision the alimony would cease on Rae's remarriage. Paragraph 11 of the contract provided petitioner deposit a $30,000 life insurance policy on his life with the trust department of a bank. Rae was the named beneficiary of this policy and there could be no change in the beneficiary until the required alimony payments were all made and if petitioner died the proceeds of the policy were to be devoted first to paying any balance of alimony due and thereafter in *35 accordance with the will of petitioner. Paragraphs 15 and 16 of the contract provide as follows: 15. Plaintiff agrees not to interfere with the defendant in her use and occupancy of the present residence or in the use and occupancy of the residence to be purchased for her. 16. The purchase of a new house for defendant and the delivery of title thereto shall not be affected by the remarriage of the defendant. The plaintiff is to have the right to all rentals in event she does not occupy the house. Prior to their divorce petitioner and Rae resided in Fort Wayne, Indiana, in a home owned by the Van Orman - Fort Wayne Corporation, an Indiana corporation, which, on April 28, 1960, operated hotels in Fort Wayne, Bloomington and Lafayette, Indiana, and 98 percent of whose outstanding shares on that date were owned by petitioner. Rae and her children continued to live in this house after the divorce until May of 1961 when she remarried and went to live in Ohio with her husband. The alimony payments required under paragraph 8 of the contract ceased when she remarried. Late in the fall of 1961, after having divorced her then husband, Rae and her children returned to Fort Wayne and *36 she selected a new residence. In January 1962 petitioner purchased the house selected by his ex-wife for $37,500. He paid the seller $7,700 down and received a warranty deed for the house. He financed the balance of the purchase price by borrowing $28,800 from a third party and securing the loan by two mortgages on the house. In the years 1962 and 1963 he paid off the sums of $2,386.64 and $2,298.07, respectively, on his mortgage loans. Also in the years 1962 and 1963 he paid the sums of $199.35 and $274.32, respectively, for insurance on the house. Petitioner deducted the above payments that he made to the seller of the house, to the third party on his mortgage loan, and for insurance, in the years paid ($10,286 in 1962 and $2,572.39 in 1963), stating on his returns that they were payments in nature of alimony to Rae Van Orman as per written separation agreement. Respondent's disallowance of the deductions results in the deficiencies now in issue. The basic issue involves the question whether the payments made by petitioner on the purchase price of a residence, on his mortgage indebtedness, and for insurance on the house, represented alimony includable in the gross income of *37 Rae under the provisions of section 71 and, as a corollary, deductible by petitioner under the provisions of section 215(a). 1442 Section 215(a) provides that a husband shall be allowed as a deduction "* * * amounts includible under section 71 in the gross income of his wife, * * *." Section 71 provides that "[i]f a wife is divorced * * * from her husband under a decree of divorce * * *, the wife's gross income includes periodic payments * * * received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband * * * under a written instrument incident to such divorce * * *." Petitioner makes a confused argument on brief that the Property Settlement Agreement should be interpreted as requiring him to provide a future home for his ex-wife and therefore any payment he made in satisfaction of this obligation "is in the nature of alimony." And he argues the "payments" that he was required to make and did make that are related to acquiring and insuring the house, constitute "periodic payments" to his ex-wife. Petitioner passes lightly over the fact that the title to the house is in his *38 name by saying that he merely "held this title as trustee." Just a cursory examination of the decree and the property settlement agreement included therein shows clearly that it requires his payment of alimony, and support for the children, and his buying a house and later giving it to his ex-wife. He could buy the house of her selection and pay for it in any manner he saw fit. The decree called for no periodic payments at all with respect to his purchase of the house. Petitioner makes an ingenious interpretation of the language that requires him to deliver unencumbered title to the house within 10 years. He argues the "clear import" of this language was that he was to buy a house for his ex-wife and make payments therefor over a 10-year period. A short answer to petitioner's argument is that the agreement made no provision for any certain type of house purchase arrangement. Petitioner chose his own method of financing the house purchase. He cannot cast the receipt of income on his wife because he adopted what he calls a payment plan of purchasing the house. Actually the stipulated facts show he paid the seller the full purchase price immediately by borrowing funds from a third *39 party. This case is much like Lounsbury v. Commissioner, 321 F. 2d 925 (C.A. 9, 1963), affirming 37 T.C. 163, where the taxpayer was ordered by the divorce court to pay his ex-wife $10,000, or deliver to her fee simple title to a home of that value. There it was held the husband's payments on his contract for the purchase of a home for his ex-wife were not "periodic payments" includable in her income. The opinion points out that the husband's buying of the home by a contract payment plan was "an arrangement by which a capital transfer was accomplished." See also Renstrom v. United States, 220 F. Supp. 688 (D.C.Neb., 1963) and Baer v. Commissioner, 16 T.C. 1418, affd. 196 F. 2d 646 (C.A. 8, 1952). Assuming, arguendo, that in some manner this agreement provided for the purchase of a home on payments there would still be no deductions of the payments by petitioner. This would be true because to be deductible they must be payments that are direct or at the very least indirect payments to the ex-wife. Sec. 1.215-1, Income Tax Regs., states that deduction is allowable with respect to periodic *40 payments in the nature of alimony "actually paid by the taxpayer [husband or ex-husband] during his taxable year and required to be included in the income of the payee wife or former wife, * * *." [Emphasis supplied.] And sec. 1.71-1(b), Income Tax Regs. states that sec. 71(a) requires the inclusion in the gross income of the wife of periodic payments "received by her" after the divorce decree. Petitioner must show that the payments confer a "present economic benefit" on his former wife so as to be included in her gross income. He must establish that the benefit conferred upon the former wife is not so contingent and speculative that it cannot be definitely determined. If he cannot, petitioner must fail for he has not met his burden of proof. Neely B. Taylor, Jr., 45 T.C. 120 (1965). The payments in the instant case which petitioner seeks to deduct from his income were certainly not direct or indirect payments to Rae and it could never be said they conferred an economic benefit on her. They were payments he made on the purchase price of a house he was buying in his own name, payments on his mortgage indebtedness, and payments for insurance *41 on the house. It is stipulated that when petitioner made the payment of $7,700 to the former owner of the house he received a warranty deed conveying the title to him. In his brief petitioner seems to argue that 1443 these payments on the purchase price of the home amounted to payments to the wife because he merely "held this title as trustee." He states that the fact that his purchase of a home was required by the contract and decree means that he held title as a "resulting trustee for her." Petitioner cites no authority for the proposition that his status with respect to the house was that of a "trust" or for the further proposition stated on brief that the wife "was from the time of purchase the beneficial and equitable owner" of the house. The record here affords no basis for any conclusion that the payments deducted conferred a determinable benefit on his ex-wife. Even if one could agree with petitioner's interpretative conclusions up to this point and find that this so-called property settlement agreement somehow provided for petitioner making house purchase payments over a period of years and made him a "resulting trustee" for the benefit of his ex-wife with respect to *42 the title of the house, the inevitable result would be that such payments would still not be includable in his ex-wife's income. It is to be noted that section 71(a) makes provision for including "periodic payments", when made under certain circumstances, in the ex-wife's income. However, subsection (c) of section 71 provides, in part, as follows: (c) Principal Sum Paid in Installments. - (1) General Rule. - For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. It must be admitted that even if the exwife is, as petitioner argues, "from the time of the purchase the beneficial and equitable owner" of the house and the down payment and mortgage payments considered purchase price payments, they would then be "installment payments discharging a part of an obligation the principal sum of which is * * * in terms of * * * property [the house], specified in the decree * * * or agreement", and thus denied periodic payment treatment under section 71(c)(1). Petitioner admits that even under *43 his interpretation of the contract his payments would be considered installment payments and denied periodic payment treatment were it not for sec. 1.71-1(d)(3)(i)(a), Income Tax Regs.[2] This regulation provides that when the payments are to cease within 10 years they will be considered periodic payments for the purposes of sec. 71(a) if they are subject to the contingencies of death of either spouse or the remarriage of the wife or change in the economic status of either. Petitioner *44 makes another labored interpretation that the intention of the parties was that the house purchase payments were to cease after his death. He says this is so because of the absence of any specific provision that they were to continue and because of the presence of paragraph 11 in the contract. We have not quoted the long paragraph 11. It has absolutely nothing to do with the house purchase portion of the contract. It merely provides the $30,000 life insurance contract will be held in escrow until the alimony judgment is paid in full and in the event of petitioner's death the policy proceeds will be devoted to paying any unpaid alimony. Actually the contract speaks clearly that the requirement that petitioner buy and pay for a house and turn it over to his ex-wife is subject to no contingencies at all. The contract specifically provides the alimony payments will cease on the exwife's remarriage and the requirement that petitioner purchase a new home and deliver title to her within 10 years will not be affected by her remarriage. The size of the alimony payments were made somewhat subject to the economic status of petitioner but his agreement to purchase the house his ex-wife selected *45 within the stated price range was absolute. It would serve no useful purpose to pursue petitioner's argument further. Each step in his argument is based on a completely fantastic, illogical interpretation of the contract. Respondent was right in disallowing the deductions. Decision will be entered for the respondent. 1444 Footnotes
1. All section reference are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, * * *.↩