JAMES M. BOLZA and NORMA S. BOLZA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bolza v. Commissioner
Docket No. 790-80.
United States Tax Court
T.C. Memo 1981-529; 1981 Tax Ct. Memo LEXIS 209; 42 T.C.M. (CCH) 1138; T.C.M. (RIA) 81529; September 22, 1981. D. Robert Autrey, Jr., for the petitioners. James R. Marietta, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1977 in the amount of $ 5,445. The only issue for decision is whether petitioners are entitled to a deduction under section 215, [1] for a $ 16,350 payment made by petitioner James M. Bolza to a bank and his former wife, Linda Joyce Harris Bolza, in payment on a mortgage indebtedness. All of the facts have been stipulated and are found accordingly. James M. Bolza (petitioner) and Norma S. Bolza, husband *211 and wife, whose legal residence was Marietta, Georgia, at the time of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1977 with the Internal Revenue Service Center, Chamblee, Georgia. Petitioner and his former wife, Linda Joyce Harris Bolza (Linda), were married in 1965. On June 1, 1973, petitioner purchased a home in Marietta, Cobb County, Georgia (the home), for $ 38,900. Title to the property was taken in petitioner's name. A portion of the purchase price of the property was paid from the proceeds of a mortgage loan from Citizens & Southern National Bank (C & S National Bank) to petitioner in the amount of $ 24,800, the balance being paid in cash. The monthly payments on the mortgage were $ 183.51. Petitioner and Linda resided in the home from June 1, 1973, until January 1, 1974. On February 21, 1975, a Georgia state court entered a decree of divorce granting a divorce to petitioner and Linda. The decree incorporated by reference an agreement entered into by the parties on that same date for the purpose of settling "between themselves all such issues as may pend in said Divorce Action, such as may be settled without *212 violation of public policy." The agreement provided (1) that Linda have custody of the parties' minor child and that petitioner pay her $ 200 per month for support of the child, (2) that petitioner have visitation rights with the child, (3) that petitioner maintain the minor child as an insured on petitioner's hospitalization insurance policy, (4) that petitioner maintain Linda as the beneficiary on a $ 10,000 life insurance policy, with Linda paying all premiums on the policy and agreeing to use the proceeds in the event of petitioner's death for the support and education of the child, (5) that petitioner sign any papers necessary to place full unencumbered title in Linda to a 1973 Vega automobile which was in her possession, and (6) that petitioner convey to Linda the home subject to the mortgage held by C & S National Bank and transfer to her all of his interest in the household goods and furnishings in that home. In addition, the agreement contained the following pertinent provisions: 4. The said JAMES MICHAEL BOLZA herewith agrees to pay to the said LINDA JOYCE HARRIS BOLZA as permanent alimony the sum of One Hundred ($ 100.00) Dollars per month, the same to be payable on *213 the first day of the month next succeeding the execution of this Agreement, and a like sum of One Hundred ($ 100.00) Dollars per month to be payable on the first day of each and every month thereafter, until her death or remarriage or until such time as she shall sell the * * * [home], or until the outstanding indebtedness with the C & S National Bank, for which the * * * [home] is pledged as security, shall have been paid, whichever event shall sooner occur, at which time the said One Hundred ($ 100.00) Dollars per month alimony payment to the said LINDA JOYCE HARRIS BOLZA shall terminate. 5. The said JAMES MICHAEL BOLZA, along with his two sisters, are the heirs at law and under the will of his mother, Vera Shell Bolza; and the said JAMES MICHAEL BOLZA is entitled to a certain inheritance from the said Estate of Vera Shell Bolza. The principal asset of the said Estate is a promissory note, dated May 30, 1973, in the original principal amount of $ 153,675.51 which is payable, interest only, in an annual amount of $ 10,757.29 on May 30, 1975 and May 30, 1976; and thereafter the principal of said promissory note is repayable in three equal annual installments of $ 51,225.17 *214 each, plus unpaid accrued interest on the unpaid balance each year, commencing on May 30, 1977 and on May 30, 1978, with the last installment due and payable on May 30, 1979, if not sooner paid. The said JAMES MICHAEL BOLZA herewith agrees to pay to the said LINDA JOYCE HARRIS BOLZA and the C & S National Bank, holder of the said security deed upon * * * [the home], from the first principal payment proceeds which the said JAMES MICHAEL BOLZA shall receive by virtue of his interest in the said promissory note owned by the Estate of Vera Shell Bolza, a sufficiency to pay and liquidate the outstanding indebtedness owed to the C & S National Bank then payable, so that the entire indebtedness owed, for which the * * * [home] is pledged as security, shall be thus paid and the home place of LINDA JOYCE HARRIS BOLZA be free and clear of the said deed to secure debt in favor of C & S National Bank. This provision contemplates, however, that the said LINDA JOYCE HARRIS BOLZA shall be unmarried at the time said indebtedness is liquidated; and in the event that she shall have married prior to the liquidation of said indebtedness according to the terms of this paragraph, then in that event *215 the said JAMES MICHAEL BOLZA shall have no obligation to pay said indebtedness to the C & S National Bank. 6. After the said JAMES MICHAEL BOLZA shall have received from the Estate of Vera Shell Bolza a sufficiency to cause the liquidation of the outstanding deed to secure debt covering the property described in paragraph three in favor of the C & S National Bank, the said JAMES MICHAEL BOLZA herewith agrees to establish with proceeds next received from the Estate of the said Vera Shell Bolza a Trust Account in any federal savings and loan association of his choice, the sum of Ten Thousand ($ 10,000.00) Dollars, which monies shall stand in the name of James Michael Bolza and Linda Joyce Harris Bolza for the use and benefit and education of James Michael Bolza, Jr.; and said account thus established from the next received proceeds from the Estate of Vera Shell Bolza shall be payable only upon the joint signature of JAMES MICHAEL BOLZA and LINDA JOYCE HARRIS BOLZA and shall be used exclusively to secure a college or baccalaureate education for James Michael Bolza, Jr. Said funds shall be used for the payment of college tuition, room and board, books, and living expenses for the *216 said James Michael Bolza, Jr. In the event that the said James Michael Bolza, Jr. shall not attend a college or university or ceases to do so and shall have attained the age of twenty-two years, then any funds remaining in said trust account shall be the exclusive property of JAMES MICHAEL BOLZA and no other person shall have any claim thereto. This provision shall be applicable whether or not the said LINDA JOYCE HARRIS BOLZA shall have married or not at the time such trust account is established or paid out, and thus, her marital status shall have no bearing on the requirement of this paragraph. 13. This Agreement constitutes the entire agreement between the parties and no modification there of shall be had except the same be in writing and agreed to by both parties. * * * On February 21, 1975, petitioner conveyed the home in Marietta, Cobb County, Georgia, to Linda by warranty deed. On or about May 30, 1977, petitioner received an installment payment on the principal of the $ 153,675.51 note. On June 28, 1977, petitioner paid $ 16,350 to his former wife and C & S National Bank pursuant to his obligation under paragraph 5 of the agreement. Petitioner did not receive *217 sufficient funds from the installment payment on the note to enable him to liquidate the full amount of the mortgage indebtedness on the home. However, on or about May 30, 1978, petitioner received another installment on the principal of the $ 153,675.51 note, which he used to pay off in full the mortgage indebtedness on the home to C & S National Bank. Linda did not report the $ 16,350 payment made on the mortgage as income on her Federal income tax return for 1977. On their Federal income tax return for 1977, petitioners claimed a $ 17,550 alimony deduction. This $ 17,550 deduction consisted of the $ 16,350 payment to discharge the mortgage and $ 1,200 of monthly payments made by petitioner to Linda pursuant to paragraph 4 of the agreement between petitioner and Linda. Respondent in his notice of deficiency disallowed the $ 16,350 mortgage payment portion of the claimed alimony deduction with the following explanation: (a) The amount of $ 17,550.00 claimed on your return as a deduction for alimony payments made to your former wife, Mrs. Linda Joyce Harris Bolza, is not allowed to the extent of $ 16,350.00 because it has not been established that any amount in excess of *218 $ 1,200.00 represents alimony payments within the purview of sections 71 and 215 of the Internal Revenue Code. Accordingly, since the payments in the amount of $ 16,350.00 are not includible in your former wife's gross income, as provided by section 71 of the Internal Revenue Code, you are not entitled to the amount of $ 16,350.00 as a deduction as provided by section 215 of the Internal Revenue Code. Section 215 provides for a deduction by a divorced husband of payments made to his former wife during the taxable year which are includable in the former wife's gross income under section 71. Section 71(a) requires a former wife to include in her gross income periodic payments received from her former husband in discharge of a legal obligation which, because of the family or marital relationship, is imposed on the former husband under the divorce decree or written instrument incident to the divorce. Section 71(c)(1) provides that as a general rule installment payments discharging a principal sum specified in the decree or agreement are not to be treated as periodic payments. However, section 71(c)(2) provides that if by the terms of *219 the decree or agreement the principal sum is to be paid, or may be paid, over a period ending more than 10 years from the date of the decree or agreement, the installment payments shall be treated as eriodic payments to the extent of 10 percent of the principal sum in any one taxable year of the wife. Sections 1.71-1(d)(3) and (4), [2] Income Tax Regs., provide that whether or not payments made under a decree or agreement are for a period of 10 years or less, such payments are to be considered periodic payments under section 71(a) if: (1) they are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife or change in the economic status of either spouse and (2) such payments are in the nature of alimony or an allowance for support. If the payments meet these conditions, they are not subject to the limitation that only 10 percent of the principal amount is to be included in the wife's income in any one year. *220 The obligation of petitioner to discharge the mortgage on the home constitutes a principal sum. Though the unpaid balance owed on the mortgage is not set forth in the agreement, the principal sum of the obligation is sufficiently specified by the agreement since the actual amount could readily be calculated and ascertained by the parties. [3]Kent v. Commissioner, 61 T.C. 133, 136 (1973). Respondent contends that even though the agreement conditions petitioner's obligation on the former wife not remarrying, thereby satisfying the first requirement *221 of section 1.71-1(d)(3)(i)(a), Income Tax Regs., the payment is not a periodic payment since the agreement provides for a single lump-sum payment. [4]
A single lump-sum payment is not periodic. Norton v. Commissioner, 16 T.C. 1216, 1218 (1951), affd. 192 F.2d 960 (8th Cir. 1951). Counsel for respondent argues that the $ 16,350 payment made in 1977 represents a portion of what was to be a single lump-sum payment. Respondent contends that the agreement imposed on petitioner the duty to make a single payment of the mortgage indebtedness rather than installment payments on the obligation and, therefore, the fact that petitioner *222 failed to receive sufficient funds from the first repayment installment on the note to comply with the requirement of the agreement is irrelevant. Where an agreement contemplates a single payment of the obligation, a taxpayer cannot make his payment periodic by arranging to make payment in two installments. Van Orman v. Commissioner, 418 F.2d 170 (7th Cir. 1969), affg. a Memorandum Opinion of this Court. Paragraph 5 of the agreement specifically states that petitioner-- agrees to pay * * * from the first principal payment proceeds which * * * [petitioner] shall receive by virtue of his interest in the said promissory note * * * a sufficiency to pay and liquidate the outstanding indebtedness owed * * * so that the entire indebtedness owed, for which the * * * [home] is pledged as security, shall be thus paid and the home place of LINDA * * * be free and clear * * *. This language appears to be a clear statement that petitioner is to pay the entire amount still remaining due on the mortgage out of the first principal payment he receives on the note. If we accept the literal language of the agreement, respondent is correct in his contention that only one *223 payment was provided for by the agreement and therefore the payment is not a periodic payment under section 71 and for that reason, even though it was paid in two payments, the payment is not deductible under section 215. Lounsbury v. Commissioner, 321 F.2d 925, 927 (9th Cir. 1963), affg. 37 T.C. 163 (1961). [5]
In spite of the clear language of paragraph 5 of the agreement, petitioner contends that a reading of the agreement as a whole shows that the payment of the mortgage was to be made in at least two installments. Petitioner contends that he was to pay off the mortgage on the home solely from funds he received as his one-third share of repayments made on the principal of the $ 153,675.51 note which was to be repaid in three equal annual installments of $ 51,225.17 each on the dates May 30, 1977, May 30, 1978, and May 30, 1979. Petitioner argues that at the time the agreement was entered into it was clear that the balance owed on the mortgage would be in the vicinity of $ 24,000 around the time of the May 30, 1977, date upon which petitioner would receive his one-third *224 share of the $ 51,225.17 first repayment installment. Petitioner states that it is therefore readily apparent that after petitioner applied his share of the first repayment installment to payment of the mortgage a balance would still be owing on the mortgage and the mortgage would only be fully liquidated upon petitioner's receiving and applying a part of his share of the May 30, 1978, second installment repayment on the principal of the note. The difficulty with petitioner's position is that the various assumptions he makes are not supported by the record. Although both parties apparently assume that petitioner was a one-third heir of his mother's estate, the record does not show this to be a fact. All the record shows is the statement in the agreement that petitioner "along with his two sisters" is an heir under the will of his mother. His proportionate interest in his mother's estate is not shown. The record shows that petitioner placed a mortgage on the home of $ 24,800 when he bought it and that the monthly mortgage payments were $ 183.51. There is no showing in the record of the amount of the mortgage remaining unpaid when the agreement was entered into on February 21, 1975, although *225 the parties to the agreement must have known the amount remaining due or have been able to readily calculate the amount. The stipulation does state that petitioner did not receive a sufficient amount from the first installment payment on the note to pay off the balance of the mortgage in full, but is silent as to the reason he did not. For all this record shows petitioner could have anticipated receiving a sufficient amount from the first payment on the note to pay the mortgage in full. On the state of this record, we conclude that petitioner has failed to show that the agreement required him to make more than one lump-sum payment. However, in our view it is not necessary to decide this case on the basis of petitioner's failure to prove that the agreement called for more than one payment for petitioner to fulfill his obligation to pay off the mortgage on the home. For reasons hereinafter stated, we conclude that under the terms of the agreement, the payment by petitioner was in the nature of a property settlement rather than a payment of alimony or for support of Linda. In order for a payment to be deductible by a husband, it is necessary that the payment not only be subject *226 to a contingency such as remarriage of the wife but also that it be made in discharge of the husband's obligation of support. Section 71(a) and section 1.71-1(d)(3)(i)(b), Income Tax Regs. Respondent contends that the $ 16,350 payment made by petitioner in 1977 was in satisfaction of Linda's property rights. A payment made as a property settlement does not constitute alimony. Jackson v. Commissioner, 54 T.C. 125, 129 (1970). The burden of proof is on petitioners to show that the payment in dispute should not be treated as made for a property settlement. Martin v. Commissioner, 73 T.C. 255, 265 (1979); Rule 142(a), Tax Court Rules of Practice and Procedure.
Whether a payment was made for support or for some other purpose is to be determined from the facts in each case. Bishop v. Commissioner, 55 T.C. 720, 724 (1971). In determining whether a payment is made to satisfy an obligation of support or to satisfy property rights, the critical factor is the intent of the parties. Phinney v. Mauk, 411 F.2d 1196, 1198 (5th Cir. 1969); Wright v. Commissioner, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976). *227 The evidence in this case does not show what property was owned by either petitioner or Linda at the time of their divorce other than the home given to Linda under the agreement. Legal title to the home was acquired solely in petitioner's name. The mortgage loan by which the purchase of the home was financed was taken out by petitioner. Though title to the home was acquired by petitioner during his marriage to Linda, she acquired no right of dower since the right of dower was abolished in Georgia in 1969.Act of Mar. 26, 1969, sec. 1, note to Title 31 of Ga. Code Ann. (effective July 1, 1969). However, section 30-118, Ga. Code Ann., [6] provides for a decree disposing of property in divorce cases. Section 30-201 and section 30-209 of the Ga. Code Ann. deal with the award of alimony. In a recent case the Supreme Court of Georgia discussed the distinction in the provisions for alimony and the provisions for disposing of property and held that the trier of the facts in a divorce case had the authority to award to one spouse real property titled in the name of the other spouse "where the basis of such award is neither alimony, partitioning, trust nor fraud, but is [an] *228 'equitable division of property.'" Stokes v. Stokes, 273 S.E. 2d 169, 171 (1980). The Stokes case overruled contrary statements in earlier cases. However, the majority opinion in the Stokes case as well as the dissenting opinion pointed out that earlier cases had recognized that such a "property settlement" could be made by agreement of the parties to the divorce. In Newell v. Newell, 229 S.E. 2d 449, 450, 237 Ga. 708 (1976), the Court stated that "alimony in a lump sum, or in gross, is in the nature of a property settlement, whether designated as such or as alimony." In the Newell case the court construed an agreement very similar to the agreement in the instant case, except that it did not provide that the payment would not be required if the wife had remarried, as a property settlement. From these Georgia cases, it appears that there can be a property settlement under Georgia law whereby the wife is assigned property held in the name of the husband. *229 The fact that the agreement here involved appears to be a property settlement under state law is not determinative of its nature for Federal tax purposes. Land v. Commissioner, 61 T.C. 675, 681 (1974). As was pointed out in the Land case, there are a number of factors to be considered in determining the intent of the parties to an agreement incident to a divorce. Whether the payments terminate on the remarriage of the wife is only one of those factors. Others of those factors listed in the Land case, at pages 683-684, are (1) whether the amount of the payment is fixed, (2) whether the payment is contingent on the husband's income, (3) whether the payment is related to the income of the husband or the wife, and (4) the relationship of the payment to the total properties owned by the husband and wife. In the instant case the payment was a fixed lumpsum amount unrelated to petitioner's income or to Linda's income. This fact is indicative of a property settlement rather than a support payment. Van Orman v. Commissioner, supra at 171-172. The record does not show the total property owned by petitioner or Linda at the time of the divorce. *230 However, the burden of proof is on petitioner and petitioner failed to establish this fact. As pointed out in Lambros v. Commissioner, 459 F.2d 69, 72 (6th Cir. 1972), any evidence outside the decree bearing on the intent of the parties was peculiarly within petitioner's ability to produce. See also Martin v. Commissioner, supra at 265. Except for the provision that the payment is not required to be made by petitioner if Linda remarries, all other factors in this case point to the intention of the parties that the transfer of the house to Linda and the lump-sum payment by petitioner of the mortgage was a property settlement. If the mere contingency of the remarriage of the wife automatically caused a payment to be in the nature of alimony or for support, the second requirement that it be for that purpose set forth in section 1.71-1(d)(3)(i)(b), Income Tax Regs., would have no meaning. The very nature of the payment petitioner made in this case suggests a property settlement. In effect the agreement provided that petitioner furnish Linda a house clear of any mortgage indebtedness. The transfer of a house to a former spouse or the purchase *231 of a house for her has generally been viewed as a property settlement. Renstrom v. United States, 220 F. Supp. 688, 692 (D.Neb. 1963). Such payments are not related to the changing income of the husband or the changing needs of the wife. They are not the type of payment that parties to an agreement intend as support payments. As stated in Van Orman v. Commissioner, supra at 172, with respect to payments made pursuant to an agreement incident to a divorce to purchase a home for the wife-- As in Lounsbury v. Commissioner of Internal Revenue, supra, if the mortgage and insurance payments in the instant case were regarded as alimony, a result would be reached which never was intended by the parties. The ex-wife would be subject to a tax for what never was intended to be "income" or csupport." Had the parties intended that petitioner make support payments to Linda in relation to the house, the agreement could have provided that he make the monthly mortgage payments rather than outright furnish her with a mortgage-free home within a little over two years after their divorce. Petitioner argues that the agreement itself indicates that the *232 parties viewed the payments to be in the nature of support since in paragraph 4 of the agreement it is specified that the $ 100 monthly alimony payments to the former wife are to terminate when petitioner has fully paid off the mortgage. [7] As was pointed out in Lounsbury v. Commissioner, supra at 927, such monthly payments are properly to be viewed as payments merely permitting the husband time to transfer a home free and clear to his former wife. *233 Considering this record as a whole, including the fact that no testimony was offered by petitioners on whom rested the burden of proof to supplement the skimpy stipulated facts, we conclude that the payment of the $ 16,350 made by petitioner in 1977 to Linda and the C & S National Bank was not a payment of alimony deductible under section 215. Decision will be entered for the respondent. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Sec. 1.71-1(d)(3) and (4), Income Tax Regs., provides as follows: (3)(i) Where payments under a decree, instrument, or agreement are to be paid over a period ending 10 years or less from the date of such decree, instrument, or agreement, such payments are not installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree, instrument, or agreement (and are considered periodic payments for the purposes of section 71(a)) only if such payments meet the following two conditions: (a) Such payments are subject to any one or more of the contingencies of death of either spouse, remarriage of the wife, or change in the economic status of either spouse, and (b) Such payments are in the nature of alimony or an allowance for support. (ii) Payments meeting the requirements of subdivision (i) are considered periodic payments for the purposes of section 71(a) regardless of whether-- (a) The contingencies described in subdivision (i)(a) of this subparagraph are set forth in the terms of the decree, instrument, or agreement, or are imposed by local law, or (b) The aggregate amount of the payments to be made in the absence of the occurrence of the contingencies described in subdivision (i)(a) of this subparagraph is explicitly stated in the decree, instrument, or agreement, or may be calculated from the face of the decree, instrument, or agreement, or (c) The total amount which will be paid may be calculated actuarially. (4) Where payments under a decree, instrument, or agreement are to be paid over a period ending more than ten years from the date of such decree, instrument, or agreement, but where such payments meet the conditions set forth in subparagraph (3)(i) of this paragraph, such payments are considered to be periodic payments for the purpose of section 71↩ without regard to the rule set forth in subparagraph (2) of this paragraph. Accordingly, the rules set forth in subparagraph (2) of this paragraph are not applicable to such payments.
3. Petitioners contend that under the agreement the former wife is to continue making the monthly payments on the mortgage until petitioner receives sufficient funds from his share of the repayment installments on the principal of the note and pays off the mortgage. There is nothing in the record to support this contention. However, even if such were the case so that the balance owed on the mortgage would decline as a result of the former wife's monthly payments, the resulting reduced balance owed on the mortgage as of the dates when repayment installments on the $ 153,675.51 note were scheduled can still be calculated.↩
4. Petitioners contend that the $ 153.675.51 note might not be paid off on time, thus extending the period of payment by petitioner beyond 10 years. There is nothing in the record to support such a contention. The record does not show whether the note is secured thus assuring repayment from the security if the maker were to default on a principal payment. Also, it is the terms of the agreement itself that must permit the making of payments beyond 10 years. Stecker v. Commissioner, 31 T.C. 749↩ (1959).
5. See also Curley v. Commissioner, T.C. Memo. 1976-398↩.
6. Sec. 30-118, Ga. Code Ann., provides as follows: 30-118 (2961) Judgment or decree The verdicts of juries disposing of the property in divorce cases shall be carried into effect by the courts, by entering up such judgment or decree, or taking such other steps usual in courts of equity, as will effectually and fully execute the same.↩
7. Petitioners on brief asserted that the mortgage payment could be viewed as representing merely an acceleration of what admittedly would be deductible monthly alimony payments. In effect petitioner is urging us to find that the mortgage payment obligation is integrated into a whole with the $ 100 monthly alimony payment obligation and that since any monthly payments made would be deductible, the $ 16,350 payment must also be deductible as alimony. However, the decided cases have consistently treated each payment separately and subject to individual analysis in determining whether the statutory requirements are met. Bernstein v. Commissioner, 622 F.2d 442, 445 (9th Cir. 1980), affg. a Memorandum Opinion of this Court; Schwab v. Commissioner, 52 T.C. 815, 818 (1969), affd. sub nom. Houston v. Commissioner, 442 F.2d 40↩ (7th Cir. 1971).